ROSE CHLANDA, Appellant, v. ST. LOUIS TRANSIT COMPANY and UNITED RAILWAYS COMPANY.

Division One, July 3, 1908.

1. NEGLIGENCE: Two Defendants. Where plaintiff charges two corporate defendants with operating a street railway and the car thereon, on which while a passenger she was injured, and charges that her injuries were due to the negligence of the servants of both, and one of them denies the allegation, the burden is on her to prove it.

2. ———: ———: Lease. Where the corporate owner by lease to another company has empowered it to operate the lines and cars of the street railway, and the lessee is the actual operating company at the time of plaintiff's injuries while a passenger on one of the cars, the lessor is not liable for personal injuries due to the negligence of the lessee's employees.

3. ———: ———: ———: Validity: Franchise: Assent. Where plaintiff introduced in evidence a lease from one defendant to

another of its street railways, the defendants are not required to show the city's assent to the lease, of either the properties or the franchises. By introducing it, plaintiff vouched for its validity.

4. ———: ———: ———: ———: ———: **Presumption.** Acts done by a corporation which presuppose the existence of other acts to make them legal and operative are presumptive proof of the latter. Where a defendant corporation had a right to make a lease of its street railway properties and did so, it will be presumed, unless the contrary is shown, that it obtained the necessary municipal assent to the lease.

5. ———: ———: ———: **Demurrer.** Where one of the defendants had leased its railway properties to the other, which was operating them at the time the injuries sued for were inflicted through the negligence of its servants in charge of the car, and that fact is shown, the court should give a peremptory instruction in favor of the lessor.

6. ———: **New Trial: Grounds on Appeal.** Where the court ordered a new trial on one ground, but refused to give it on another good ground assigned, its action will be upheld on appeal, whether the ground assigned was good or not.

7. **NEGLIGENCE: Excessive Verdict: $18,000.** Plaintiff was injured by a collision of street cars. She was thrown out of her seat, then backwards against the seat, the injury being to the small of the back. There were no broken bones, no lesions, no existing abnormal organs traced to the injury. There was once a slight and temporary discoloration, but no visible scar. The evidence clearly established resulting nervous trouble. Her symptoms are subjective instead of objective—that is, they are largely got at through her own statements, except such conclusions as may be drawn from her expression of eyes, her loss of weight and her use of crutches and chairs in walking. Her physicians testified that at one time she had concussion of the spine and locomotor ataxia, but they had not examined her for a year prior to the trial, and the disinterested physicians who were appointed by the court to examine her testified that there were no such troubles, and that after the excitement of the litigation had subsided she would likely recover. *Held*, that a verdict of $18,000 was excessive.

8. ———: **Passenger: General Allegation: Res Ipsa Loquitur.** Where plaintiff was a passenger on a street car and was injured by a rear-end collision of another car with hers, and her petition counts on general negligence, she may invoke the doctrine of *res ipsa loquitur*. She is not required to show in what particulars defendant was negligent—such as, insufficient lights, defective brakes, inattention of the motorman, etc.

9. ———: **Physician: Evidence.** A physician still in plaintiff's employ, who went to her house to collect a bill for his services rendered in connection with the injuries sued for, may testify that while at her house for that purpose he saw her walk up the stairs without crutches—the bone of contention being her injuries. He was not seeking information to enable him to prescribe for her or while attending her in a professional capacity.

10. ———: **Evidence: Cumulative.** Where the trend of plaintiff's case was that, as a result of the injury, she could not walk without artificial aid, the testimony of a witness that he saw her shortly before the trial go up the stairs without crutches, cannot be excluded or its exclusion excused on the ground that it is cumulative since another witness had already testified to the like effect.

Appeal from Boone Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*C. B. Sebastian, Thomas T. Fauntleroy* and *Shepard Barclay* for appellant.

(1) The trial court was right in excluding an answer by Dr. Hixon (an attending physician) to the question as to plaintiff's condition when he was first called to treat her. What comes within a physician's observation of his patient's "condition," when called to treat her, is within the professional secrecy imposed by the statute on that subject, which declares "incompetent to testify," a "physician or surgeon, concerning any information which he may have acquired" while attending "in a professional character," etc. R. S. 1899, sec. 4659; Gartside v. Insurance Co., 76 Mo. 446; Smoot v. K. C., 194 Mo. 530; Edington v. Insurance Co., 67 N. Y. 194; State v. Kennedy, 177 Mo. 130 (quoting and approving the Edington case). (2) The offer of proof, in connection with Dr. Hixon's first testimony, contains in itself a call for some facts to which he was incompetent (as physician) to testify, as shown

by the above authorities. The rest of the offer of proof defendants were allowed to supply at a later stage of the case, when the objection to his testimony was withdrawn. Moreover, as part of the offer called for facts which were incompetent, the entire offer was properly rejected by the court. Smith v. Bank, 104 Pa. St. 518; Clark v. Ryan, 95 Ala. 406; Jones, Evid., sec. 897; Over v. Shifling, 102 Ind. 191; Farleigh v. Kelley, 28 Mont. 421; Bank v. North, 2 S. Dak. 480; Doe v. Beviss, 7 C. B. 456; Leicher v. Keeney, 98 Mo. App. 394; Reynolds v. Franklin, 47 Minn. 145; McGrew v. Railroad, 109 Mo. 582; Lyon v. Batz, 42 Mo. App. 606. (3) The court excluded answer by Dr. Henry to a question asking him to "describe the plaintiff's condition at the time you first examined her." The objection thereto was sustained. The examination at once proceeded, without any offer of proof of any facts which defendants may have expected to prove in answer to the question excluded. The ruling is, therefore, not available as reversible error, because: (a) Where no offer is made of the facts sought to be elicited by a question, the mere exclusion of an unspoken answer thereto constitutes no error. Railroad v. Cheek, 152 Ind. 663; St. Louis v. Babcock, 156 Mo. 152; Parker v. Holland, 115 Mo. App. 681; Ruschenberg v. Railroad, 161 Mo. 81; Caskey v. City, 101 Mo. App. 590; State v. Goddard, 162 Mo. 228. (b) The ruling was correct, irrespective of any matter of form, because the question called for the witness's observation of his patient when he had been engaged to attend her as a physician. It was therefore within the ban of professional secrecy imposed by the statute. Sec. 4659, R. S. 1899; Obermeyer v. Chair Co., 120 Mo. App. 59; See, also, cases already cited above to point 1. (4) Defendants sought to ask this witness, Dr. Henry, her physician, whether he "saw her" (plaintiff) "walking about there" (meaning at her house, where he had called) "at that time."

The learned judge overruled the objection of plaintiff to that question, and plaintiff excepted. Thereupon defendants' counsel volunteered the information that "This doctor has not been discharged as the plaintiff's physician, but has continued to treat her and was at that time going to see her with reference to his bill." The court then said: "I sustain the objection in that view of the case." If in this there was any error, it was obviously invited, for the first ruling of the court in favor of defendants was changed because of the suggestions of their counsel. (a) A party cannot complain of an error which he has thus invited. The acceptance of the invitation should shield the error with the protection of such hospitality, and transform the status of the error into that of a welcome friend. Dice v. Hamilton, 178 Mo. 90; Daggs v. Smith, 193 Mo. 501; Hogan v. Hinchey, 195 Mo. 527; Smart v. Kansas City, 105 S. W. 720; Bailey v. Kansas City, 189 Mo. 513; McGinniss v. Printing Co., 122 Mo. App. 227. (b) However, the ruling was itself correct, in view of the admission as to the physician's continuous employment. His observation of plaintiff "walking about" bore directly upon her physical and nervous condition. That condition was what he had been engaged to treat; and the testimony falls within the Gartside and other decisions in regard to the range of immunity from disclosure in the relation of the physician and patient. Obermeyer v. Chair Co., 120 Mo. App. 59. (5) The offer of proof from the same witness was inadmissible. The court rightly sustained the objection thereto under the admission by defendant's learned counsel that "this doctor has not been discharged," but "has continued to treat her." (a) What "this doctor" observed in regard to her "walking without the use of crutches" and going "up one flight of stairs" "without the use of crutches" were all matters within proper range of his observation as an attending physician in view of

the nature of her case and symptoms described by defendants' physician experts. Edington v. Ins. Co., 67 N. Y. 194; Smoot v. Kansas City, 194 Mo. 530; In re Preston's Will, 99 N. Y. Supp. 312; Railroad v. Thomas, 152 Fed. 365. (b) Moreover, what was sought to be shown by this witness, Dr. Henry, was immediately proven by another, Mr. Slough (whose testimony was not contradicted in rebuttal) who said that he was at the same place, the residence of plaintiff, "about a week before Dr. Henry went there," that he saw plaintiff and "she walked away and went down stairs without crutches," "apparently with not a thing the matter with her." So that the evidence sought of Dr. Henry, on this particular point, was merely cumulative. Its exclusion, therefore, was not reversible error under the rule established in many decisions. Brill v. Eddy, 115 Mo. 606; Roe v. Kansas City, 100 Mo. 190; Gidionsen v. Railroad, 129 Mo. 399; Caskey v. City, 101 Mo. App. 597; Robinson v. St. Joseph, 97 Mo. App. 510; Hicks v. Railroad, 68 Mo. 335; Leavitt v. Miller, 64 Mo. App. 147; Bank v. Longfellow, 96 Mo. App. 394. (6) The collison of the cars was prima-facie evidence of negligence in their operation, so far as plaintiff is concerned. She was a passenger for hire, and entitled to have exercised towards her the highest practicable care of faithful and experienced railroad men in the same line and service. The instructions on the right of recovery were plainly good. Magoffin v. Railroad, 102 Mo. 540; Railroad v. Arms, 91 U. S. 492; Sweeney v. Railroad, 150 Mo. 385. (7) The damages awarded to plaintiff were not excessive in view of her expectation of life (26 years); her average yearly earnings of $1,000, a total loss; her medical expenses, about $1,000; permanent disability from manual labor and the pain and suffering which had reduced her to the condition of a "physical wreck." The evidence of permanency of her helpless and hopeless condition

warranted the finding, which was approved by the trial judge. Smiley v. Railroad, 160 Mo. 629; Smith v. Whittier, 95 Cal. 279; Tuthill v. Railroad, 30 N. Y. Supp. 959; Stewart v. Railroad, 66 N. Y. Supp. 436; Railroad v. Hynes, 50 S. W. 624.

*Boyle & Priest* and *T. E. Francis* for respondents.

(1) The court erred in refusing to permit Dr. Hixon to testify on behalf of defendants concerning the manner of his treatment of plaintiff and the extent of her injuries, because plaintiff had waived her right to object to said testimony on the ground of its being a privileged communication, by having stated on cross-examination "that she had no objection to Dr. Hixon testifying as a witness." 10 Enc. of Evid., p. 142; Elliott v. Kansas City, 198 Mo. 593. (2) Dr. Hixon's testimony was admissible on the additional ground that plaintiff had voluntarily opened the door of the consultation room by having stated how many times said doctor had visited her professionally and by having introduced her daughter as a witness to testify to the manner in which said doctor had treated her. Webb v. Railroad, 89 Mo. App. 604; Highfill v. Railroad, 93 Mo. App. 219; Holloway v. Kansas City, 184 Mo. 19; Ellis v. Baird, 31 Ind. App. 295; 10 Enc. of Evid., p. 144. (3) The court erred in refusing to permit Dr. Henry to testify for defendants that a few days prior to the trial (while at plaintiff's house for the purpose of collecting a bill and not for the purpose of treating her), he saw her walk around the house and go up one flight of stairs without using crutches. This testimony was not a "privileged communication." It was not information obtained by the physician while attending the patient in a "professional character," nor was it "information necessary to enable the physician to prescribe for the patient or do any act for her as a surgeon." R. S. 1899, sec. 4659; Holloway v. Kansas City,

184 Mo. 19; James v. Kansas City, 85 Mo. App. 20; Green v. Railroad, 109 S. W. 715. (4) The ruling of the court excluding Dr. Henry's testimony was not, as appellant says, a self-invited error. The statement made by defendants' counsel to the effect that at the time Dr. Henry observed plaintiff walking without crutches the relationship of physician and patient existed between them is binding on defendants as an admission of fact, but the court's erroneous ruling on that admission of fact is open to objection on the part of defendants. Daggs v. Smith, 193 Mo. 494; Land Co. v. Bretz, 125 Mo. 418.

LAMM, J.—This is a suit for $35,000 damages for personal injuries alleged to have been received by plaintiff through the negligence of two domestic street railway corporations, viz., the St. Louis Transit Company and the United Railways Company of St. Louis.

Begun in the circuit court of the city of St. Louis, such changes of venue were had that the cause went to the Boone Circuit Court and was tried at Columbia before Judge Waller and a jury, resulting in a verdict against both defendants for $18,000. Defendants, not content, filed their separate motions for a new trial. The court sustained both, after taking time to consider. There was an array of grounds in each motion but, singling out one, the court made it the basis of its order, viz.: Error in excluding legal and competent evidence offered by defendants. From the order granting a new trial, plaintiff appeals after an unsuccessful motion to vacate it.

The cause was tried on a second amended petition setting forth that defendants were doing business in the city of St. Louis as common carriers of passengers for hire, owning and operating a line of street railway and cars run by electricity upon Washington avenue, a public street in said city, and connecting with a sys-

tem of street railways similarly owned and operated; that on the 6th day of December, 1901, she was a passenger for pay on one of defendants' cars. That while seated therein, and when between Thirteenth and Fifteenth streets, another of defendants' cars ran into hers, "because of the negligence and careless operation of said cars of defendants, whereby they were so permitted to collide as aforesaid, when by the exercise of due and reasonable care, such as it was the duty of defendants to observe towards plaintiff as a passenger as aforesaid, in the said circumstances, said collision would have been avoided by defendants and their agents in charge of said cars and each of them."

By the collision, plaintiff alleges she was violently thrown out of her seat with much force, "so that she fell backward upon the same seat;" that she received severe injuries to her back and spinal column; was severely jolted and shocked and bruised and received hurts to her spine and inwardly which crippled her for life, destroyed her health and happiness, subjected her to heavy expenses for medical care, attention and nursing and will continue in the future to cause such expenses, that she has endured and will endure great physical and mental pain and suffering, has lost her ability to earn a livelihood, has lost time and earnings to a large amount and will continue to lose them in the future—all as the direct result of said collision and injuries.

The defendants filed general denials as separate answers.

It stands conceded plaintiff was a passenger for pay, that defendant Transit Company was operating the car on which she was riding and the one ramming it as a common carrier of passengers for hire and that a rear-end collision occurred. So much is without conflict.

Plaintiff introduced testimony tending to show

that the force of the collision was severe; that her car had stopped to let passengers off and on; and that a following car struck hers with great force, throwing her out of her seat and then backward, injuring her in the small of the back; that therefrom she had lost weight (twenty to thirty pounds) and power of locomotion, had become nervous, enemic and pale, suffering constant pain by day and by night, which pain was increasing instead of diminishing; and that she was generally obliged to use crutches in walking but sometimes could walk at home without, aided by a chair or cane. Her medical experts gave it as their opinion that she suffered a concussion of the spine; that locomotor ataxia or paralysis resulted; that she would never completely recover the use of her limbs and that her helplessness is permanent. These experts had not examined her later than March, 1902 (the trial was in June, 1904).

A few days before her injury she had been examined by a physician for insurance and was found in perfect nervous condition—"a picture of health" and "sound in all particulars." The same physician had seen plaintiff at intervals since that examination, the last time about July 26, 1903. At that time (from observation) he characterized her condition as that of a "physical wreck," and as showing a lack of locomotion.

Plaintiff is a widow and was engaged in the occupation of a seamstress in all its various branches—custom shirt-making, dress-making, embroidery—all kinds of fancy work, to make a living for her family. She was earning thereat from $1,000 to $1,100 per year. Since her injury she had not earned a dollar, was not able to perform duties as seamstress. Her hearing had become defective. When trying to walk without assistance she had a sense of being ready to fall. As the result of her injuries, she had incurred

liability for medical services to the amount of $1,000, and for drugs and medicines about $500.

Defendants' testimony tended to show that some part of the machinery (the turnbuckle) of the car on which plaintiff was riding broke, that the motorman, hearing a rattling noise from the broken part dragging on the pavement, stopped his car between cross streets to examine, and, while so stopped, the following car collided with it very slightly. It was about 7:30 p. m. on December 6, 1901—a dark, rainy, drizzling evening. The grade was down about one foot to the block. The following car was going about four and one-half miles an hour and was not over fifteen feet behind. That the jar was not hard enough "to notice." Defendants also put in evidence admissions by plaintiff to two ladies to the effect that she was not thrown out of her seat; that the collision did not produce much of a jar; that she did not feel the effects of it for two days afterwards and did not know she was hurt until then. One of the claim-agents in the employ of the transit company (Slough) testified that once during the year of the trial and twice the year before he had seen plaintiff. Once he saw her walking down stairs without crutches "apparently with not a thing the matter with her."

The court appointed a commission of disinterested medical experts (Drs. McAlester, Moss and Gordon) to examine plaintiff. Defendants used them as witnesses. From their testimony, it appeared they examined her a day or so before testifying, at the Parker Hospital on the University grounds.

Doctor McAlester gave it as his opinion that she was suffering from traumatic neurasthenia, i. e., an over-sensitive condition of the nervous system from some injury. His judgment was that she was not suffering from paralysis or locomotor ataxia. He said she located her injury at the juncture of the sacrum

with the last lumbar vertebra, that is, low down in the back. That probably she would get well. That was his opinion, though it was a hard matter for a man to say. The history of the bulk of such injuries is that most of them get well. On cross-examination, he testified that injuries producing results to the nervous system such as seen in plaintiff's case were not necessarily of a serious character. That an over-sensitive condition may follow slight injuries—more than probable they do. That traumatic neurasthenia and traumatic hysteria were not quite, perhaps, but almost synonymous. That a person by centering his mind on a given point can modify the functions of an organ. That he could see or feel nothing in plaintiff's person by which he could judge of the nature of the injury, and he had to take her statement for the latter. That he noticed the expression of her face and it indicated she was suffering from traumatic neurasthenia; that the day he examined her she had some hysteria. On redirect examination he testified that he wouldn't state positively but he thought she would get over it; that the existence of litigation, in his opinion, aggravated her condition.

Doctor Gordon testified that plaintiff complained of a sensitive area at the lower part of the spine; that her pulse beats (when examined) were a little fast; that he found no evidence of paralysis or locomotor ataxia; that he found her arms and limbs well nourished and firm; that she used her arms very well and wrote her name very well; and that she could stand on her feet, but complained she had to use a crutch to walk or support herself by a chair or something of that kind; that she was suffering from a sensitive condition of the nervous system and he thought she would likely recover; that neurasthenia and hysteria were pretty nearly synonymous terms.

Dr. Moss's testimony agreed in substance with that of Drs. McAlester and Gordon.

In this court, defendants file separate briefs in support of the order granting a new trial. The United Railways Company puts its argument on a ground peculiar to itself.

I. It will be seen from the abridgment of the petition that plaintiff charges that both of the corporate defendants were operating the street railway line and the cars thereon, including the two in question. The gist of the charge is that plaintiff suffered damages through the negligence of the servants of both. Now, the United Railways Company denies that allegation. Hence, under the issues made, the burden was on plaintiff to prove that charge. How did she carry that burden—well or ill?

There is not a scintilla of testimony directly or indirectly even squinting that way unless a certain lease, put in evidence by plaintiff, from the United Railways Company to the Transit Company proves it. That lease is set out in Moorshead v. United Railways Company of St. Louis (certified here from the St. Louis Court of Appeals), 203 Mo. 121. It is very long and we shall reproduce none of its terms. Inquirers may find them in that case.

In connection with the offer of the lease, the record shows the following:

"It is admitted by the parties to the suit that the cars mentioned in the petition in this case were operated by the St. Louis Transit Company.

"Also that the place on Washington avenue in St. Louis, where the alleged accident is said to have occurred, and where plaintiff claims to have been injured, was then a part of the property leased by the United Railways of St. Louis to the St. Louis Transit Company by lease between those companies made in September, 1899.

"The defendant admits the fact as stated in the above stipulation, that that is a part of the line that is covered by lease between the two companies mentioned, but the defendant objects to the competency of that fact tending to prove any issue in the case, and more especially for the reason that although the United Railways Company may have leased its cars and lines to the St. Louis Transit Company, that fact does not tend to prove that the two companies were jointly operating this line of the St. Louis Transit Company. This admission here is that at the time said line was being operated by the Transit Company, and if that be true, then the United Railways Company cannot be liable in this case.

"The plaintiff offered in evidence a copy of the lease entered into between the said two companies, which is offered as tending to show the property in question was leased while belonging to the United Railways Company, and it is leased for operating purposes to the St. Louis Transit Company.

"To the introduction of this lease in evidence the defendant at the time objected, for the reason that if the facts stated in the petition in this case be true the United Railways Company cannot possibly be liable in this action. It is immaterial as a matter of law that the obligation of the parties may have been as stated or set out in the lease, still the United Railways Company would, notwithstanding that, not be liable in this action for any negligence on the part of the St. Louis Transit Company whose employees were operating the particular car of the St. Louis Transit Company, that being the operating company and the United Railways Company not having anything to do with it; the relations existing between the two companies by reason of this lease that is proposed to be offered

in evidence here could rot make the United Railways Company liable.

"There is no objection made to this lease on the ground that it is not a correct copy of the original, or that it is not a copy of the lease. On the contrary it is admitted to be a copy of said lease and the objection is on the general ground that it doesn't tend to prove any issue whatever in the case.

"Which objection the court overruled, and to the action of the court in overruling their objection the defendants at the time saved their exception.

"Plaintiff offers this lease in evidence for the purpose of showing that the United Railways Company is the owner of the property and that it is operated by the St. Louis Transit Company for the benefit of both companies.

"The Court: I will overrule the objection and admit this lease in evidence for the present, subject to exclusion hereafter if in the course of the evidence in the case, I find the lease is inadmissible.

"To which ruling of the court defendants, by counsel, excepted at the time."

On this record, these observations may be made: In the Moorshead case it was contended, as follows (mark the first ground as it is urged in the case at bar):

"That the United Railways Company is liable in damages to plaintiff notwithstanding the contract between it and the Transit Company, and the operation of the line and car on which she was hurt by the Transit Company, pursuant to the contract, is maintained on three grounds: *first, that if the contract is a lease, it is inoperative for lack of consent to the leasing by the city of St. Louis;* second, that the contract is not a lease, but in legal effect is an agreement by the Transit Company to operate the railway lines it was put in possession of for the United Railways Company

as the latter's agent, or else is a partnership agreement between the two companies; third, that if a valid lease, the United Railways Company as lessor remained liable for all torts of the Transit Company as lessee, because the statute allowing such lease by street railway companies contains no clause expressly exempting a leasing company from liability for the acts of the lessee.''

Those contentions were examined with fine patience and acumen by Judge GOODE in the St. Louis Court of Appeals and were disallowed *seriatim.* What he said in that behalf was adopted by this court In Banc and spread of record as meeting our unanimous views.

In the case at bar, we are asked to reopen the question or send the matter into Banc to have it rethreshed. But we shall do neither. Because, the Moorshead case was well considered. The conclusion of Brother GRAVES that the opinion of GOODE, J., was sound was deliberately arrived at. We were all of mind that the document in question was a lease to all intents and purposes, and, as such lease, was a good defense against liability of the lessor for torts of the lessee.

Accordingly, absent allegation and evidence (as here) showing the lease was a contrivance for a fraudulent or wrongful purpose in fact or law, so that ''the covin doth suffocate the right,'' it must be held that the United Railways Company did not remain liable to those suffering personal injuries from the negligence of the employees of the Transit Company.

Hence, the lease, *ex vi termini,* did not tend to fasten liability on the United Railways Company, unless a phase of the case now to pass in review had that effect. That is this:

It is insisted by learned counsel that, even if we stand by the doctrine of the Moorshead case, still the United Railways Company is liable because there is

no *municipal assent* shown to the lease. They put a finger on article 12, section 20, of the Constitution, which provides for municipal assent for the operation of a street railway in a city and provides, further, that "the franchises so granted shall not be transferred without similar assent first obtained." They argue that, absent such assent shown, the United Railways Company is liable. They do not say there was no such assent *in fact*. They argue that their introduction of the paper put the defendant in such pickle that it had to prove the assent.

Is there soundness in this view? We think not. Because:

(a) It will not escape attention that in legal effect that very point was in the Moorshead case and disallowed (see, aforesaid contentions).

(b) Again, if plaintiff had fastened liability on the United Railways Company, *aliunde,* and if it had introduced the lease to avoid that liability, then, on such hypothesis and in a proper case, plaintiff might possibly be heard on an objection that the lease was bad as not receiving municipal assent. But we reserve the point; for there is no such case here. Here, *plaintiff*. introduced the lease. After offering it, getting it in evidence and using it as proof, counsel ought no more to be heard to impugn its validity than to impeach a witness they had put on the stand. By that act they vouched for its legitimacy and may not place a bar-sinister on its shield. They may argue the legal effect of the lease is this or that, or so and so, but may not argue it is not what it purports to be, to-wit, a valid lease. This is within the reasoning of the holding in the Moorshead case, *supra* (*q. v.,* l. c. pp. 157-8).

(c) Moreover, defendants' learned counsel maintain the proposition that acts done by a corporation which presuppose the existence of other acts to make them legal and operative are presumptive proof of

the latter. They invoke such proposition and presumption in this case. We think the proposition sound, and that they are entitled to the presumption. [State *ex rel.* v. Kupferle, 44 Mo. l. c. 158; American Ins. Co. v. Smith, 73 Mo. l. c. 371; Chouteau v. Railroad, 122 Mo. l. c. 384-5.]

The maxim that all things are presumed to be legitimately done, until it is proved to the contrary (*Omnia praesumuntur legitime,* etc.), is applicable to corporate acts. Says Mr. Justice Story [Bank of United States v. Dandridge, 12 Wheat. l. c. 69]: "By the general rule of evidence, presumptions are continually made in cases of private persons of acts even of the most solemn nature, when those acts are the natural result or necessary accompaniment of other circumstances. In aid of this salutary principle, the law itself, for the purpose of strengthening the infirmity of evidence, and upholding transactions intimately connected with the public peace, and the security of private property, indulges its own presumptions. It presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia presumuntur rite et solemnitur esse acta, donec probetur in contrarium.* . . . The same presumptions are, we think, applicable to corporations."

In American Insurance Co. v. Smith, *supra,* a defense was interposed to a premium note given to a foreign insurance company that there was no proof of its authority to do business in this State. Of that defense this court said: "As the plaintiff might, by complying with our laws, rightfully issue a policy of fire insurance in this State, and as nothing appears on the face of the note or the application to indicate that the policy recited to have been issued was issued in viola-

tion of law, or was for any other reason illegal or void, it must be presumed that the plaintiff had taken those steps which would, under our law, authorize it to issue such policy.''

In other words, those artificial persons, *yclept* corporations, are entitled to a presumption of duty well done until the contrary appears, the same as a natural person. A presumption therefore arises that the United Railways Company had the right to do what it did do, to-wit, make that lease, and this presumption fairly includes a municipal assent first obtained. It is rebuttable, but here there is no effort to rebut it.

The premises considered, we conclude not only that the Moorshead case settles the proposition in hand as an authority in point, but that under the peculiar facts of this record there is no substance in the point on the reason of the thing.

II. The United Railways Company asked a peremptory instruction at the close of the case. It was refused. In its motion for a new trial it assigned error of that refusal. That assignment was good, hence the motion, under our holding in the preceding paragraph, might well have been sustained on that ground. The order granting a new trial was not put on any such ground. But that is not vital. It is a common-place rule of steady application in appellate procedure that though a court, *nisi,* may give one reason for granting a new trial, and that a bad one, if there were other good reasons, then its action, producing a right result in the administration of justice, can stand. The reason assigned for a decision below is of no value on appeal, so long as the end reached is right. The *reasons* have served their purpose, the thing *done* is the live matter.

There was, therefore, no error in granting defendant, the United Railways Company, a new trial.

III.  We come now to consider the case from the viewpoint of the Transit Company.

(a)  The verdict is a heavy one.  While it must be viewed with serene judicial judgment, yet its very size bespeaks anxious judicial scrutiny.  It stands conceded there were no broken bones.  There was once a slight and very temporary discoloration, but never a visible scar.  There were and are no discoverable lesions or known existing abnormal organs traced to the injury.  That Mrs. Chlanda has resulting nervous trouble seems put beyond all question.  Her main symptoms are classified, by men of science, as subjective instead of objective—that is, they are got at through her own statements except as to those visible indices such as the expression of her countenance, her loss of weight and her use of artificial aids in moving about.  The testimony of her experts was based on examinations antedating the trial by a year or more.  Their conclusion as to the permanency of the injuries to her nervous system must be tempered by that fact.  The disinterested commission of doctors appointed by the court gave it as their opinion that the probabilities of recovery were in her favor.  We find no testimony from physicians who examined her condition at or close to the time of the trial tending to show that she was not in a class suffering from nervous trouble colored and somewhat affected by psychological phenomena prone to disappear when her mind was set at rest. We say this without the slightest intent to indicate our belief in the lack of sincerity and honesty of the worthy lady whose cause is held in judgment.

There being no elements of malice in the case, she was entitled (not to punitive damages, but) to just compensation—no more.

We are of opinion the order granting a new trial may be sustained on the theory of an excessive verdict somewhat attributable to such overwrought sympathy

on the part of the jury as amounts (in legal effect) to prejudice and passion.  There was an assignment of error to that effect in the motion for a new trial and the order granting one may stand on that assignment.

(b)  Counsel contend that the order may be sustained because of error in giving instructions for plaintiff and in modifying one asked by defendant. We shall not develop the contention.  Our consideration of it leads us to the conclusion it is without merit.  Among other views pressed here under that head, they insist the doctrine of *res ipsa loquitur* cannot be invoked by plaintiff.  We do not agree to that.  The petition is broad enough to permit the application of that doctrine.  The relation of carrier and passenger existing and the petition counting on general negligence, plaintiff's case falls within the line of cases holding that under such circumstances the thing speaks for itself. Therefore, whether the following car was moving too swiftly or whether it was running too closely to plaintiff's car or whether there was negligence in stopping the first car, without notice to the following car and so close to it that a collision inevitably resulted, makes no difference.  The collision happened, plaintiff was hurt thereby, and the burden rested upon defendant to show it used the highest practicable degree of care to preserve its passenger from injury.

(c)  There was error in the exclusion of testimony. Under this head we will notice but one assignment— this for the reason that other incidents may not arise on a retrial.  Defendant put Doctor Henry on the stand and the record shows the following:

"Dr. Robert Y. Henry (a practicing physician), being duly sworn on behalf of defendants, testified as follows:

"Q. I will ask you whether or not you saw the plaintiff during the month of June at any time?  A. Yes, sir.

"Q. Where at? A. At her residence on Blow street.

"Q. June of this year? A. Yes, sir.

"Q. What day of June was it? A. I could not give the date exactly.

"Q. Was it about the middle of the present month? A. Yes, sir, about the middle of this month.

"Q. Where was she at that time? A. At her residence.

"Q. State whether or not you saw her walking about there anywhere at that time?

"To this question the plaintiff at the time objected, for the reason—

"By the Court: What was the purpose of your visit at that time? A. I went to see her relative to a bill she owed me.

"By Judge Barclay: Was it a bill for your services in her behalf? A. Yes, sir.

"The plaintiff here objected to this witness stating anything he saw at that time, for the same reasons as heretofore.

"Which objection the court overruled, as to what he saw. And to the action of the court in overruling her objection the plaintiff at the time saved her exception.

"Mr. Jamison (counsel for defendant): This doctor has not been discharged as the plaintiff's physician, but has continued to treat her and was at that time going to see her with reference to his bill.

"The Court: I sustain the objection in that view of the case.

"And to the action of the court in sustaining the objection the defendant at the time saved its exception.

"The defendant offered to prove by this witness: That he saw the plaintiff at her residence about the 15th day of the present month; that she was walking without the use of crutches, and went up one flight of

stairs, in the presence of this witness, without the use of crutches.

"To this offer of proof the plaintiff at the time objected for the same reasons as heretofore.

"Which objection the court sustained, and to the action of the court in sustaining the objection of the plaintiff the defendant at the time saved its exception."

Conceding Doctor Henry was plaintiff's physician at the time in question, yet we think the offered evidence was competent.

The statutory interdiction on the testimony of a physician or surgeon is salutary but must be kept well within the banks of the prescribed statutory channel. He is incompetent to testify "concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." The offered testimony did not come within the letter or the spirit of the statute. Doctor Henry was making no professional call on the plaintiff. He was not seeking information to enable him to prescribe for her or do any act for her as a surgeon. Admitting that facts gathered for that purpose while acting in a professional capacity are a sealed book, yet in this instance he was neither acting in a professional capacity nor was the fact inquired about in any wise necessary to treat his patient. In the law, as to that fact, Doctor Henry was the same as any other bill collector possessed with eyes. According to the common sense of the thing the matter was plainly without the province of a physician, and he was, therefore, competent to testify. [Green v. Railroad, 211 Mo. l. c. 31, et seq., and authorities cited.]

But it is said that if the exclusion of that testimony was error, it is not reversible error because the

ruling was *invited*. It is argued that at first the court overruled the objection, but defendants' counsel not content to let well enough alone then injected the following remark: "This doctor has not been discharged as the plaintiff's physician, but has continued to treat her and was at that time going to see her with reference to his bill."

The shrewd construction put upon this interpolation by counsel is that it was an invitation to change the ruling, hence was an invitation to commit error, which (they say) the court proceeded to do "most obligingly." But was not counsel entitled to lay the facts before the court so that it might rule understandingly and well advised? Is a court, *nisi*, to be likened to a gun loaded only with error, ready to fire it off if counsel state a fact? The remark of counsel undoubtedly led up to the ruling, but did not invite an erroneous one.

The chief bone of contention as to the Transit Company was over the extent of the injuries to plaintiff, their permanency and the *quantum* of damages. True, defendant put in proof from Slough that at another time he had seen plaintiff going down stairs without crutches. But the whole trend of plaintiff's case was to the effect that she could not walk without artificial aid. The point was sharply controverted and was a deadly one. Courts have sometimes said that where offered evidence was merely cumulative, as that term is technically understood, it might not be error to exclude it. Counsel cite cases to that effect, a sample of which is Brill v. Eddy, 115 Mo. 1. c. 606. In that case the offer was to show that the father of the injured boy told him to stay away from the cars. It was held its exclusion was not error. That such fact might be germane if the father was suing. That the boy himself testified in plain and distinct terms that he knew it was wrong to ride on the cars and had been driven

away from the yards on a number of occasions. The court said: "With this evidence of the boy before the jury, the defendants could not have been prejudiced by the exclusion of that of the father on the same point."

If, in this case, plaintiff had testified that she could go up and down stairs without artificial aid, then the Brill case would be in point. But on the facts here it is not in point. So, the other cases cited may be distinguished from the case at bar on principle.

Where the crucial issue in a case turns on a question of fact upon which the evidence is in direct conflict, the exclusion of competent evidence is a matter of much more consequence than it would be in a case where the testimony on the point was substantially all one way. [Levels v. Railroad, 196 Mo. l. c. 618.]

By way of illustration let us indulge an hypothesis, viz.: Counsel insist that, with Slough's testimony before the jury, the offered proof was merely cumulative and hence it was not error to refuse it. Now, suppose the court had ruled that, although plaintiff had introduced several witnesses who testified to her helplessness in walking—that she could not walk without a crutch, a cane or some other object to lean on—yet defendant was restricted to one witness (to-wit, Slough) to prove the contrary? Would learned counsel contend that such a ruling would be right? Hardly, but, if so, such is not the law. [Railroad v. Aubuchon, 199 Mo. l. c. 360, *et seq.*, and cases cited.]

The premises all considered, we hold the order granting a new trial subserved the ends of justice. Accordingly, it is affirmed.

All concur except *Valliant, P. J.,* absent.