C. Edward PIEPER (Plaintiff), Respondent,

v.

Annette LEWIS, Administratrix of the
Estate of Edwin Lewis, Deceased,
(Defendant), Appellant.

No. 30103.

St. Louis Court of Appeals.
Missouri.

Feb. 17, 1959.

Walter Wehrle and Thomas Wehrle, Clayton, for appellant.

R. C. Reis, St. Louis, for respondent.

DOERNER, Commissioner.

This action was instituted by plaintiff to recover damages resulting from a collision between his automobile and that of the deceased, Edwin Eugene Lewis, which occurred at the intersection of Clarkson Road and Clayton Road in St. Louis County, Missouri, on September 17, 1955, at what plaintiff gave as 6:45 p.m., Daylight Sav-

ing Time. Plaintiff's petition was in two counts. In Count I, he sought damages of $25,000 for the death of his wife; and in Count II, damages of $7,500 for his own personal injuries, medical and hospital expenses, and the depreciation of his car. The trial resulted in a verdict and judgment for the plaintiff of $5,000 on Count I and $2,500 on Count II, from which defendant has duly appealed. Defendant is the duly appointed and acting Administratrix of the estate of Edward Eugene Lewis, but whether he died as a result of the accident, or subsequently from another cause, is not shown by the evidence.

The sole negligence pleaded and relied upon was under the humanitarian doctrine, in that the deceased knew or should have known that the plaintiff and his wife were in a position of imminent peril in time thereafter to have prevented their injury by giving a warning or by swerving deceased's vehicle to one side, and that deceased failed to warn or turn his vehicle to one side. Defendant contends that the trial court erred in overruling defendant's motions for a directed verdict at the close of plaintiff's case and again at the close of the whole case, and erred in overruling defendant's motion for judgment in accordance with defendant's motion for a directed verdict for two reasons: first, because plaintiff failed to make a submissible case under the humanitarian doctrine; and secondly, that having failed to make a case under the humanitarian doctrine defendant was guilty of contributory negligence as a matter of law. Under the view we take as to the first contention it will be unnecessary to consider the second.

■■ Since defendant offered evidence after her motion at the close of plaintiff's case had been overruled she thereby waived whatever error, if any, the trial court may have committed by its ruling thereon. Hence only the ruling on defendant's motion at the close of the whole case is before us. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601; Wilt v. Waterfield, Mo.Sup., 273 S.W.2d 290;

Altenderfer v. Harkins, Mo.App., 243 S.W.2d 558. And in considering whether plaintiff made a submissible case we view the evidence and the reasonable inferences therefrom in the light most favorable to the plaintiff. Smith v. Siedhoff, Mo.Sup., 209 S.W.2d 233.

■ As stated, the collision occurred at the intersection of Clarkson Road, which is Missouri Highway 340, and Clayton Road, or County Highway HH, on September 17, 1955. Clarkson, a concrete highway, runs in a general north and south direction. For most of its length Clarkson Road is a two-lane highway, but 300 feet both north and south of its intersection with Clayton Road turn-offs, or outside lanes, are provided so that for the stated distance north and south of the intersection it is four-lanes wide, each lane being 10 feet in width. Clayton, west of the west line of Clarkson, is a two-lane road, 19 feet wide, paved with macadam or black top. East of the east line of Clarkson, Clayton Road is four-lanes wide, the two center lanes being about in line with the two lanes of Clayton extending westwardly, and the two outside lanes being turn-off lanes. All are about 10 feet wide. Traffic moving eastwardly on Clayton Road towards Clarkson Road is controlled by a stop sign located on the south shoulder of Clayton Road, about 10 to 20 feet west of the west line of Clarkson Road. There are no stop signs for traffic traveling north or south on Clarkson. The intersection is level, but for an unspecified number of feet south of the intersection Clarkson Road slopes down grade, the exact degree not being stated in the record. There is testimony in the record that if one stood at the southwest corner of the intersection one was able to see southwardly on Clarkson Road a "quarter of a mile or so." At the time of the collision the sun was shining, the visibility was good, and the pavement was dry.

Plaintiff testified that he and his wife had visited a friend who lived west of Clarkson and south of Clayton. They

left the home of their friend about 6:25 p. m., Daylight Saving Time. Driving his 1950 four-door Dodge sedan, with his wife in the front seat beside him, plaintiff reached and drove eastwardly on Clayton Road. He stated that he stopped for the stop sign at Clarkson Road, with the front end of his car five or six feet from the west edge of Clarkson; that he first looked to the north, that he could see a distance of approximately 300 feet, and that he saw no traffic approaching from that direction. That he then looked to the south, in which direction he could see only about 300 feet because of obstructions in the form of trees and brush; that he then started up in low gear, and may or may not have shifted in to second gear; that his estimate of his speed was "somewhere between 5 and 10 miles an hour," picking up speed and accelerating slightly; that at no time after he started up from the stop did he again look to the north or south, nor did he ever see the deceased's car; that when he was east of the center line of Clarkson Road he caught a fleeting glimpse of something to his right; that he started to accelerate his car and turned a little bit to his left; that his car was struck almost immediately on the right side, and the next thing he knew he was picking himself up off of the apron of the road. Plaintiff also testified that he never heard any warning or horn sound. The testimony of plaintiff was that after the collision his car came to rest on the north shoulder of Clayton Road, headed east, and that the deceased's car was approximately twenty feet east of his car, on Clayton Road, also facing east.

On cross-examination plaintiff stated that he did not know in what distance he could stop his car going at either five or ten miles per hour; that his car was equipped with four-wheel hydraulic brakes which were in good working condition; and that his eyesight was good.

Plaintiff's witness, Bob Williams, Jr., a St. Louis County police officer, testified that when he reached the scene about ten minutes after receiving a call at 6:40 p. m.,

Daylight Saving Time, the front end of plaintiff's car was against a utility pole located on the northeast corner of the intersection, facing east; that three or four feet of the car were off the pavement, east of the east edge of Clarkson Road, and the rest on the pavement. And further, that the deceased's car was facing east, partially on the north shoulder of Clayton Road and partially on the pavement, about ten feet east of the east edge of Clarkson Road. The officer also testified that there were glass and chrome strips all over the intersection, but that at a point 38 feet east of the west edge of Clarkson Road, and about two feet north of the center line of Clayton Road, there was a collection of dirt, glass and debris. This officer also testified that there were skid marks ten feet long, which started south of and ended at the debris. Officer Williams testified further that by actual measurement it was twenty-eight feet from the point where he saw the debris to the utility pole on the northeast corner of the intersection; and that while he could not describe them, there were other skid marks going from the place where he saw the debris to where the automobiles came to rest. On cross-examination the officer testified that the ten foot long skid marks were on the "east side of Clarkson and north side of Clayton." At this point the record becomes confusing, in that the squares of the linoleum on the courtroom floor were used to depict the intersection, and references made to "this square" and "that section" of the intersection, which cannot be followed. However, the witness reiterated later that the skid marks were in the northeast corner of the intersection; that "they were kind of curved to the right," and that they were south of and led up to the point where he found the debris.

Sergeant Stewart Duzey, of the St. Louis County Police Department, testified that he accompanied Officer Williams to the scene of the accident. He placed the position of the plaintiff's car as on Clarkson Road entirely on the pavement, facing east, about

ten feet north of the northern edge of Clayton Road, and that of the deceased's car as on the shoulder of the northeast corner of the intersection, parallel with Clayton Road, facing eastwardly. This witness first placed the position of the debris as "in the northbound lane of traffic for Clarkson Road" and "about in the center" of Clayton Road, but after referring to the joint police report, confirmed that the debris was thirty-eight feet east of the western edge of Clarkson Road. He also stated that by actual measurement it was twenty-eight feet from the point of the debris to the right rear or closest point of the deceased's car, and "just a few feet further" to the plaintiff's car; and that there were two separate sets of skid marks from the point of the debris, one of which ended at the right front and rear wheels of plaintiff's car, and the other set to the rear end of the deceased's car. He described the skid marks as not those of the type made by an automobile stopped while going straight, but as "skid marks from the side, they were white," such as made by a car going sidewise.

State Trooper Robert H. Mudd of the Highway Patrol stated that he arrived at the scene at approximately 7:10 p. m., Daylight Saving Time. He testified that he drew a diagram of the position of the cars, as shown on his report. That plaintiff's car was on the east side of Clarkson Road, slightly north of Clayton Road, entirely on the pavement, with the front end approximately even with the eastern edge; and that the deceased's car was on the north side of Clayton Road, east of Clarkson facing east, partially on the pavement and partially on the shoulder. He placed the debris as half a lane from the eastern edge of Clarkson, and just to the north of the center line of Clayton Road. He recalled seeing broken, very light skid marks that "went every direction," but stated that they were not heavy enough to record on his report.

Both the oral testimony of plaintiff and his witnesses and the photographs plain-tiff introduced in evidence make it apparent that plaintiff's car was struck on the right side, the center of the impact having been at the right front door. The same evidence demonstrates that the damage to the deceased's car was centered at the left, front side of the car; the left headlight having been smashed, while the one on the right side was not damaged. Both cars were demolished.

██ After her motion for a directed verdict had been overruled, defendant introduced a physician as her only witness. However, during her cross-examination of Trooper Mudd, defendant had had his report of the accident marked for identification as her exhibits "E" and "F", and in her case defendant introduced it in evidence. The report was made on the usual official form. Concerning the deceased's car there appears the following:

"Speed $\overline{60}$
(Officer's est.)"

Defendant argues that the record in the case is completely devoid of any evidence as to the position or speed of deceased's car at the time plaintiff came into a position of imminent peril or at any time prior to the collision. It is true that no eyewitness testified to the position or speed of the deceased's car, but it is not accurate to say that the record is completely devoid of evidence as to these facts. Plaintiff testified that immediately before he started up from the stop sign he looked southwardly, that he could see in that direction for 300 feet, and that no car was then in sight. As to the proof of speed, defendant supplied that evidence by the introduction of Trooper Mudd's report, in which the Trooper estimated the deceased's speed at 60 miles per hour. Having introduced the report in evidence defendant is bound by it. Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S.W. 249. And in passing upon whether plaintiff made a submissible case we must give plaintiff the benefit of any favorable evidence introduced by defendant as long as such evidence does not

(as it did not here) conflict with plaintiff's theory of his case. Williams v. Ricklemann, Mo.Sup., 292 S.W.2d 276; Miller v. Riss & Co., Mo.Sup., 259 S.W.2d 366; Sullivan v. Union Electric Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97.

In his brief, plaintiff argues that he reached a position of imminent peril when he was at that distance west of the center line of Clarkson Road which he would travel, going either five or ten miles per hour, during the classic reaction time of three-fourths of a second. This distance he computes at 5.5 feet to 11 feet west of the center line. Using the alternate speeds, and the distance the front of his car had traveled at the time of the collision, 23.5 feet or 29 feet, plaintiff's computation shows that it took him 3.7 or 2.2 seconds to traverse such distances. At 60 miles per hour, the speed of the deceased's car as estimated by Trooper Mudd, the distance covered to the point where the collision occurred, during 3.7 or 2.2 seconds, would be 193 or 325 feet. Plaintiff further contends that within the stated times and distances the deceased, by sounding a warning, could have alerted the plaintiff to his danger and enabled him to either stop his car short of the point at which the collision occurred (within nine feet, exclusive of reaction time, De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628) or by a very slight increase of speed to have safely passed the path of the deceased's car; and that the deceased could also, within such time and distance, in safety to himself and others (according to the evidence there was no southbound traffic), have swerved his car to his left so as to have avoided the collision. Defendant did not dispute plaintiff's hypothesis either in her brief or in argument, and in the light of the evidence we are of the opinion that the plaintiff made a submissible case for the jury.

Furthermore, if it be assumed that plaintiff was in a position of imminent peril as the front of his car started across the west edge of Clarkson Road, the question of whether defendant could thereafter have acted in time to have safely averted the accident was also one for the jury. Plaintiff testified that when he stopped for the stop sign, 5 or 6 feet west of the western edge of Clarkson Road, he could see southwardly for 300 feet and that there was no car then in sight approaching from that direction. It may be logically assumed, in view of plaintiff's testimony that he was going somewhere between 5 and 10 miles per hour at the time the collision occurred, that plaintiff's average speed was 7.5 miles per hour for the forty-eight feet the front of his car traveled to the point of collision. Thus it took plaintiff approximately 4.4 seconds to travel that distance. In the same period of time the deceased's car traveled at least the known 300 feet, plus the additional distance involved in moving from one lane to another, or about 310 feet, which mathematically results in a speed of at least forty-eight miles per hour. Again, taking these relative speeds and distances into account, the jury could well have reached the conclusion that defendant could have warned the plaintiff in ample time to have either enabled plaintiff to stop short of the path of the deceased's car or to have accelerated sufficiently to have safely crossed that path (an increase of but two miles per hour would have been sufficient), or for the deceased to have swerved to his left a few feet, and thus have avoided the collision. Creech v. Blackwell, Mo.Sup., 298 S.W.2d 394.

It is therefore the recommendation of the Commissioner that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment of the circuit court is hereby affirmed.

RUDDY, P. J., WOLFE, Judge, and JOHN K. REGAN, Special Judge, concur.