259 S.W.2d 366 (1953)
MILLER
v.
RISS & CO., Inc. et al.
No. 43172.
Supreme Court of Missouri, Division No. 1.
June 8, 1953.
Motion for Rehearing or to Transfer to Denied July 13, 1953.
*367 Louis Yaffe, St. Louis (Charles M. Shaw and Wayne C. Smith, Jr., Clayton, of counsel), for appellant.
Harlan & Harlan, John L. Harlan, Jr., Clayton (Joseph Nessenfeld, St. Louis, of counsel), for respondent.
Motion for Rehearing or to Transfer to Court en Banc Denied July 13, 1953.
DALTON, Judge.
Action for $25,000 damages for personal injuries alleged to have been sustained when the automobile in which plaintiff was riding as a guest of her husband came into collision with a tractor-trailer. The cause was dismissed as to defendant Acuff at the close of plaintiff's case, and thereafter, verdict and judgment were for defendant Riss and Company, hereinafter referred to as defendant. Plaintiff has appealed.
Appellant contends that the trial court erred in giving Instruction No. 6 and in admitting certain evidence offered by defendant. Instruction No. 6 purports to be a "sole cause" instruction based upon the alleged negligence of the driver of the automobile in which plaintiff was riding. Since it is contended that the instruction is, in certain respects, unsupported by any evidence in the case, we shall carefully review the applicable testimony.
Plaintiff testified that, late in the afternoon of October 20, 1950, she was returning from downtown St. Louis with her husband in his automobile. They were traveling west on Cass avenue, approaching the intersection of Cass avenue with Hadley. When they were between one-half block and a block from the intersection, she saw defendant's tractor-trailer stopped "right close" to the north curb of Cass at Cass and Hadley. She also said "it seems to me it was stopped." The automobile in which she was riding came up very slowly and "moved to a stop." The automobile was "towards the back of the trailer," when the tractor-trailer "moved first" and made a sharp turn to the left (south) so that the trailer hit the front part of the automobile and dragged it to the left. Her husband turned his automobile sharply to the left to avoid contact with the trailer, but he was unable to prevent a collision. Plaintiff was thrown forward inside the automobile and her knee hurt and other injuries were sustained. She admitted that she had sustained prior injuries to her knee in a fall about 20 or 25 years ago and also in 1937, and that she had been in an automobile collision in 1949, when she "was just shook up." After her fall in 1937, she did not return to work "until about 1941 or 1942."
*368 Plaintiff's husband (Miller), as a witness for her, testified that on the occasion in question he was driving west on Cass at 15 to 16 miles per hour and, when within some one-half to three-fourths of a block from Hadley, he saw defendant's truck parked on the north side of Cass, two or three feet from the north curb. The truck was parked east of Hadley, but "blocking the railroad crossing" at Cass and Hadley. Miller proceeded in his own lane, approximately two or three feet, north of the center line of Cass. There was a space of some 15 feet between the center line of the street and the side of the tractor-trailer and some 4 to 6 feet between the two vehicles. Miller's automobile was 7 or 8 feet wide. Cass was "about a 50-foot street." Miller had decreased his speed to 8 to 10 miles per hour by the time he was 15 feet from the rear of the trailer and when "about half way alongside of the trailer," "approaching it alongside of it," and "was practically stopped," the tractor-trailer started to move and, without notice, signal or warning, made a sharp turn to the left. Miller applied his brakes and swerved to the left. The rear wheels of the trailer caught onto the front bumper at the right side of the automobile and "started dragging" the automobile. The tractor-trailer stopped a half-block south on Hadley after the vehicles separated and Miller had followed and sounded his horn, signaling for a stop. The collision took place 10 or 12 feet, or more, east of the east line of Hadley. There was some traffic coming east on Cass as Miller approached the intersection. Miller also testified that he was driving about 8 to 10 miles per hour, more or less, when he attempted to pass the tractor-trailer. He further testified: "I had the right front wheel, the tire, and the right front headlight, door over my headlights damaged, and the bumper on the right side was damaged, and also there was a few minor things caused fron the damage when the truck-trailer hooked onto my bumper and tilted it, it damaged a few panels on the left side that connect with the bumper."
Defendant's witness and driver, Roy Cates, testified that he was involved in a collision with the Miller automobile at Cass and Hadley avenues on or about October 20, 1950. At the time he was operating a Corbett tractor, with an eight wheel, tandem action, aluminum Riss trailer attached. The eight wheels were at the rear of the trailer. The total length of the tractor and trailer was about 42 feet. He had entered Cass at Eleventh street and was proceeding west on Cass, driving awful slow, because he wanted to make a turn onto Hadley, and traffic was crowding him there from the west. Visibility was good and the streets were level. He was traveling about 5 miles per hour as he approached Hadley. There were two lines of traffic eastbound and he had been forced over slightly to the right or north, but not over 3 or 4 feet from the white center line. As traffic gave way, he tried to work back to the line. As soon as the eastbound traffic broke to where he had an opening, he signaled a left-hand turn with his hand lowered and pulled to the center of the street, commenced to swing the tractor around and went to the center of Hadley and proceeded to make a left turn. He felt no collision at any time, but, when he was fairly well out of the turn and had begun to straighten out, an automobile came up beside the tractor, sounding the horn, and pulled in front of the tractor. Cates pulled to the right curb and stopped. The driver of the automobile contended that he had been hit and that Cates was leaving the scene of an accident. Cates, accompanied by a police officer, examined both vehicles, but could find no damage to either the automobile or to the tractor or trailer. The Miller car later left on its own power. Cates did not completely stop at Hadley, but had hand signaled for a stop and, when traffic cleared, he lowered his hand, signaling for a left turn. He then looked in the side mirror to see if any one was crowding him. It was just a second before he turned. There was traffic behind, but none up close enough to be dangerous, no car was within 20 or 30 feet or more behind his trailer. No one was coming up the side when he started the left turn. No one was trying to pass. To have passed, a car would have had to swing across south of the center line of the street. The car he saw behind him was *369 a safe distance from him (Cates) to make a left turn, when he turned. When he saw that it was clear, he started to pick up speed for the turn, because he had slowed below 5 miles per hour. He felt no jar and did not think it possible that the trailer could have caught onto the Miller automobile and he (Cates) not know of it. When Cates stopped, Miller claimed that the left rear wheel of the trailer had collided with his automobile. Cates testified that he did not know whether there had been a collision or not, as he only had Miller's word for it.
Plaintiff submitted her cause upon numerous assignments of defendant's primary negligence, all submitted in the disjunctive, and she further submitted her cause upon humanitarian negligence in failing to stop, as hereinafter stated.
Defendant's Instruction No. 6, is as follows: "The Court instructs the jury that it is the duty of the driver of an automobile following another automobile to keep a lookout to observe the automobile ahead and its movements, and to keep his automobile under control so that he would not run into the automobile ahead should it slow down and turn to its left and to keep his automobile a sufficient distance behind the automobile in front of him so as to avoid danger in case of sudden slowing of the automobile ahead. You are further instructed that if you find from the evidence that at the time and place in question the driver of the automobile in which plaintiff was riding did not exercise the highest degree of care in keeping a lookout ahead to observe the truck mentioned in the evidence and its movements, or in keeping his car under control so as to avoid a collision, or if you find that he did not exercise the highest degree of care to keep his automobile a sufficient distance behind the truck mentioned in the evidence so as to enable him to avoid colliding with it if it slowed down and turned, and if you further find that such conduct on his part, if any, was negligent, and that such negligence was the `sole cause' of the collision mentioned in evidence, and if you further find that the driver of the defendant's truck was not negligent as submitted to you in the other instructions herewith, then your verdict must be in favor of the defendant and against plaintiff." (Italics ours).
Appellant insists that Instruction No. 6 is prejudicially erroneous because it is not supported by defendant's evidence, or any evidence in the case; that it has no application to the facts of this case; and that, because it is unsupported by evidence and has no application to the facts, it is confusing and misleading and constitutes a roving commission. In particular, appellant says that "there is not one word of evidence, either from the plaintiff's or the defendant's case, from which a jury could find that Mr. Miller was following the defendant's vehicle"; that "defendant's evidence does not reveal any circumstances from which a jury could infer that Miller was following defendant"; that defendant's witness Cates first identified the Miller car when it drove in front of him on Hadley avenue and defendant made "no showing as to how it got onto Hadley"; that "if a jury found that Miller was following defendant, such finding must have its origin and foundation in speculation, guess and surmise"; and that "the testimony offered by defendant was all to one and only one effect, that is, that there was no collision." Appellant concedes that "plaintiff's evidence did place the Miller car east of and behind defendant, but not following defendant, as plaintiff stated defendant's tractor-trailer was stopped at the curb." Appellant says that defendant "can not submit a theory based on the adversary's evidence" so as to authorize the jury to find that Miller's car was "following" defendant's vehicle or to find that there was a "collision"; that, since there was no such evidence offered by defendant, there was "no evidence to support a finding of negligence on the part of Miller, the driver of the car in which plaintiff was riding"; and, therefore, that the instruction was confusing and misleading and gave the jury a roving commission of the worst sort. Huger v. Doerr, Mo.App., 170 S.W.2d 689, 691. Appellant insists that a proper instruction should have covered the actual situation according to "what was shown by defendant's evidence", Shields v. Keller, 348 Mo. 326, 153 S.W.2d 60, 63; that "a defendant *370 is entitled to submit, by instructions to the jury, his theory of the case as developed by his own evidence", Bashkow v. McBride, Mo.App., 177 S.W.2d 637, 639; that "Submissions are not made on an adversary's evidence defeating a recovery or a defense", Bowman v. Standard Oil Co., 350 Mo. 958, 169 S.W.2d 384, 388; and that a jury may not "be permitted to conjure up imaginary specific instances of negligence in the absence of supporting evidence." Lukitsch v. Public Service Co., 362 Mo. 1071, 246 S.W. 2d 749, 754.
We find no merit in appellant's contentions. Appellant may not complain that there was no evidence in the record that the Miller car was "following" defendant's tractor-trailer, prior to the alleged "collision," or on the ground that there was no evidence of a "collision." Instruction No. 2, requested by plaintiff and given by the court, assumes that there was evidence of both such facts and submitted a finding thereof to the jury as follows: "The Court instructs the jury that if you find from the evidence that as the automobile in which plaintiff was riding was approaching Hadley, the tractor-trailer mentioned in evidence was stopped on the north side of Cass avenue at the place mentioned therein and the said tractor-trailer then started forward and to the left into the lane in which plaintiff was proceeding, and that after the tractor-trailer started forward and to the left, the plaintiff became and was in a position of imminent peril of injury, and that the driver of the tractor-trailer saw or by the exercise of the highest degree of care could have seen the plaintiff in such position of peril in time thereafter for said driver, by the exercise of the highest degree of care, to have stopped the tractor-trailer and thus and thereby have avoided a collision with the automobile in which plaintiff was riding, but failed so to do, * * *." (Italics ours).
Instruction No. 2 assumes the existence of evidence to support a finding of some of the same facts as submitted in Instruction No. 6, to wit, that the Miller automobile was "following" the defendant's vehicle, traveling in the same direction on the same street and that there was a "collision." Appellant may not complain that there was no evidence to support a finding of such facts. Continental Casualty Co. v. Monarch Transfer & Storage Co. Mo.App., 23 S.W. 2d 209, 212(4); Rankin v. Gaugh, Mo.App., 6 S.W.2d 640, 644(2).
Nor was the fact of a "collision" contrary to defendant's theory of the case so as to bar defendant from submitting a finding thereof to the jury. It is true that the defendant by answer expressly denied the fact of a collision between the vehicles in question, but the defendant further pleaded that "if a collision did occur" it was caused by the negligence of plaintiff's husband. In the trial, defendant offered no direct testimony that there was no collision. Defendant's driver did testify to facts from which an inference could be drawn that no collision occurred, since he felt no collision and could find no damage, yet he further said that he did not know whether a collision had occurred or not. The defendant offered no instruction authorizing a finding that no collision had in fact occurred. Defendant's trial theory included the proposition that, "if a collision did occur," it was caused by the negligence of plaintiff's husband and, in oral argument to the jury, defendant's counsel stated "apparently there was some very slight collision between the cars." Nor did defendant offer any testimony that the Miller car was not "following" defendant's vehicle. All of the evidence and the inference to be drawn therefrom tend to show that the Miller vehicle was behind the defendant's vehicle and that both were proceeding in the same direction on the same street before they came in contact with each other.
Appellant's complaint of Instruction No. 6 is apparently based upon the theory that a defendant may not have the benefit of plaintiff's evidence that tends to aid or support defendant's case and must always base his instructions on his own evidence. Such is not the rule. A plaintiff has the right to hypothesize the facts from his side of the case which will support a verdict in his favor, and by the same token it is defendant's right to have an affirmative submission *371 of his own theory of the facts, which, if found to be true, will defeat the plaintiff's case and absolve himself from liability. Long v. Mild, 347 Mo. 1002, 149 S. W.2d 853, 857; Branson v. Abernathy Furniture Co., 344 Mo. 1171, 130 S.W.2d 562, 570. Of course a plaintiff may not submit his case under two contradictory theories of recovery, to wit, on his own trial theory and also upon defendant's trial theory, which is contradictory to his own. Dilallo v. Lynch, 340 Mo. 82, 101 S.W.2d 7, 10.
Generally, both parties are entitled to the benefit of all the evidence in the case favorable to their respective positions. "The plaintiff is entitled to the evidence offered by defendant favorable to his case and vice versa." Barr v. Missouri Pac. R. Co., Mo.Supp., 37 S.W.2d 927, 930. The rule as to a plaintiff is stated in Elkin v. St. Louis Public Serv. Co., 335 Mo. 951, 74 S.W.2d 600, 603, as follows: "Plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot claim the benefit of any of defendant's evidence which contradicts his own testimony and is at war with his own theory of the case." If defendant's evidence supports a theory upon which plaintiff, under the issues raised by the pleadings, may recover, then plaintiff is entitled to have that theory submitted to the jury in the instructions. Evans v. Klusmeyer, 301 Mo. 352, 256 S. W. 1036, 1039. Conversely, any defense based upon plaintiff's evidence which shows that plaintiff ought not recover and which is consistent with defendant's trial theory is proper and a defendant may instruct thereon.
Limiting our consideration to the specific objections presented against said instruction, we must hold that the trial court did not err in giving Instruction No. 6, although it was in part based upon plaintiff's evidence that "a collision" did in fact occur. There was nothing in the record to bar defendant from having the benefit of this evidence and instructing upon it. Nor was the instruction erroneous on the ground that there was no evidence in the record that the Miller automobile was "following" defendant's vehicle. Clearly, there was substantial evidence from which the jury could find that neither vehicle came to a complete stop; that both were in motion at all times moving in the same direction on the same street; and that the Miller automobile came up from the rear and came in contact with the side of defendant's vehicle. Although, plaintiff testified that the Miller car stopped beside defendant's vehicle, Mr. Miller testified that he did not stop; and that he was driving at eight to 10 miles per hour, more or less, when he attempted to pass, and the collision occurred. Plaintiff and her husband also said that defendant's tractor-trailer was stopped, while defendant's driver said he was at all times in motion in low gear, moving very slowly. From the conflicting evidence the jury could well find that both vehicles were in motion, with the Miller car "following," or coming up behind defendant's vehicle, and attempting to pass when the collision occurred. The assignment is overruled.
Appellant further complains that "the court erred * * * in permitting and allowing complaints of other illness and records of history of other illness, not associated with the claimed injury, to be read to the jury." Under points and authorities, the appellant does not attempt to specify or point out wherein the error lies, as required by Supreme Court Rule 1.08(a)(3). In her petition plaintiff complained of injury to her left knee, which she alleged was sustained when her left knee struck an interior portion of the Miller automobile at the time of the collision. She further complained of extreme shock, nervousness and severe pain and charged that she had been unable to do her housework. She testified at the trial in support of the allegations of her petition and, thereafter, defendant offered in evidence certain records of the Jewish Hospital with reference to plaintiff's prior difficulties. Plaintiff's counsel admitted the identity of the records, but asked that the evidence be confined to prior injuries sustained to plaintiff's knee, since "any other conditions she may have had *372 would not be material." The objection was overruled. Later, counsel objected on the ground that the record with reference to certain matters, such as "abortion threatened July 19, 1929," were not pertinent, nor material to the issues; and that the record was hearsay and the entries did not tend to prove or disprove any issues. These objections were made after a part of the record had been read to the jury. There was no motion to strike. The court overruled the objections and other entries were read. Appellant in argument now complains that the evidence concerned conditions "remote in point of time"; and that it related to collateral matters which tended to draw the minds of the jurors away from the issues in the case. Appellant further argues that the evidence was confusing, misleading and prejudicial; and that it had no other purpose. Appellant says the word "abortion" was a "highly inflammatory word and very misleading." No such objections were presented to and ruled upon by the trial court and they may not be considered here. Section 512.160, subd. 1, RSMo 1949, V.A.M. S.; Pierce v. New York Cent. R. Co., Mo. Sup., 257 S.W.2d 84, 88(5).
Further, the admission of evidence alleged to be entirely immaterial to the issues and without probative force cannot now be held to constitute reversible error on the ground that the evidence was prejudicial. Span v. Jackson, Walker Coal & Mining Co., 322 Mo. 158, 16 S.W.2d 190, 200. The evidence was clearly admitted as bearing upon the issue of the extent of plaintiff's damages and now that the jury has returned a verdict for defendant, we cannot say that plaintiff was prejudiced thereby. As stated, the jury found against plaintiff on the issue of defendant's liability. Therefore, rulings on matters relating only to the amount of damages to which plaintiff might be entitled to receive, if defendant was liable, cannot on this record be considered so prejudicial as to constitute reversible error. Poague v. Kurn, 346 Mo. 153, 140 S.W.2d 13, 20. The assignment is overruled.
The judgment is affirmed.
All concur.