**Lester TOMLIN, Appellant,**

**v.**

**Marion ALFORD, d/b/a Old Orchard Market, Respondent.**

**No. 48046.**

Supreme Court of Missouri,

Division No. 1.

Nov. 13, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 11, 1961.

Donald S. Hilleary, Harry L. Hilleary, St. Louis, for appellant.

John J. Cole, Heneghan, Roberts & Cole, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

In this action plaintiff seeks to recover the sum of $15,000 for personal injuries allegedly sustained from a fall in a storage shed used and occupied by defendant in the operation of a retail grocery store and meat market in Webster Groves, Missouri. The case has been twice tried, each trial resulting in a verdict for defendant. Plaintiff, on December 31, 1959, appealed from the judgment rendered in conformity with the last verdict. It appearing that the amount in dispute exceeds $7,500 and that the appeal was taken prior to January 1, 1960, jurisdiction lies in this court. Constitution of Missouri, Art. V, § 3, V.A.M.S.; Senate Bill No. 7, Laws 1959, now § 477.040 RSMo 1959, V.A.M.S. (to which revision all statutory references are made unless otherwise indicated).

The storage shed in which plaintiff allegedly fell was attached to the rear of defendant's store and was used for storage of empty soft drink bottles. Plaintiff, at the times herein material, was an employee of Canada Dry Bottling Company, a bottler and distributor of such beverages. As such employee, he made regular trips to defendant's store and storage shed to deliver his employer's products and reclaim its empty bottles. Plaintiff alleged and testified that he was caused to fall and sustain injuries as the result of the act of defendant's employee in placing empty beverage bottles in the path of his work in collecting empty bottles from the basement. Defendant denied the allegations of the petition and alleged that, if injured, plaintiff's injuries were due in whole or in part to his failure to exercise ordinary care for his own safety. The gist of defendant's evidence was that if plaintiff was injured in said shed, neither defendant nor any of his employees had knowledge thereof nor had anything whatever to do with causing it. On this appeal, plaintiff asserts two grounds for reversal and remand for new trial: (1) that the trial court erred in giving defendant's Instruction No. 4 submitting the issue of plaintiff's contributory negligence for the reason that it was contradictory of and inconsistent with defendant's evidence and Instruction No. 5 which submitted defendant's plea that plaintiff's fall, if sustained, was not caused by any act or omission of defendant's employees; and (2) error in admission of plaintiff's army medical records which impeached plaintiff's testimony that he suffered presently existing low back injuries from his alleged fall at defendant's store, on grounds that said records were not shown to be admissible under the Uniform Business Records Act, §§ 490.660–490.690. Proper disposition of the first assignment requires a statement of the evidence bearing upon both the issue of defendant's negligence and the issue of plaintiff's contributory negligence.

Defendant's store faces south at 653 East Big Bend Road. It occupies a one-story building and basement and the shed attached to the basement. The lot on which these premises are situate slopes sharply to the rear, causing the floor of the basement to be below the lot level and the entrance to the door leading into the rear of the store proper to be above the lot level. Entrance into the rear of the store proper may be had either by walking up an outside stairway to a rear entrance door or by entrance through the shed, into the basement and up an inside stairway from the basement to the store proper.

The shed is about "9 by 12 by 15 feet" in size. The outside entrance thereto is enclosed by an iron grill door, which is kept locked. A concrete runway inclines downward from the iron grill door to the basement door. On each side of that runway, a concrete wall extends upward from the floor to form a ledge extending horizontally a distance of about 12 feet from the iron grill door to the rear basement wall of the store. We are here concerned with the ledge and a platform on the left side of the runway as one enters through the iron grill door. That ledge is about eight inches wide. Due to the decline in the floor of the runway as it extends toward the basement door, the height of the ledge above the runway floor varies from one or two feet at its beginning to a height of 3½ feet at the basement wall. A wooden plank 8 inches wide and two inches thick covers the top of the ledge. On the left edge of the ledge a "back board" rises 6 to 8 inches above the ledge and forms the edge of a level platform which extends from the left edge of the ledge to the left wall of the shed, a distance of 40 to 44 inches.

Plaintiff, on direct examination, testified: On an afternoon in the latter part of April or the first part of May, 1957, he, as was his custom in the performance of his duties, drove his employer's truck to the rear of defendant's store, walked up the back stairs into the rear entrance of the store proper and reported to defendant and a "lady employee" at the cash register that he had a delivery of soda to make and was told "they" would open the shed and basement doors for him. Plaintiff left the store by the back door and "wheeled" (by hand truck) the soda through the iron grill doorway, down the runway and through the basement door into the basement, both of which doors said female employee had in the meantime opened for him. After depositing the full cases in the basement, he came back through the basement door, walked up the runway incline to a point where he could readily step up onto the ledge and then walked back on the ledge to pick up two cases of emptly bottles from the point on the platform where they were usually kept adjacent to the edge of the ledge near its connection with the basement wall. As he picked up two cases of quart-size empty bottles, defendant's said employee, who stood behind him near the basement door, said to him that she had a few "loose" empty bottles which she would like for him to take away. He did not turn around and never saw the bottles in her hand, but he heard them "clinking together." At that time, with a case of empty bottles in each hand, he started to turn left to walk along the ledge to a point where he could step from it to the floor of the runway. As he took a turning step, his left foot struck one of several empty bottles which had been placed on the ledge after he had walked along it to pick up the cases of empties. This caused him to fall to the floor of the runway. Defendant's employee had not told him that she had placed them on the ledge and he did not see her do so. As he pulled himself up, she said, "Oh, did you hurt yourself?" He made no report to anyone else at the store. He went up into the store, where he received cash in payment of his bill and, in turn, gave a receipt. He then finished the remainder of his day's work. He reported the fact of his fall to his employer's foreman. Thereafter, he continued to work regularly until May 31st. The first time that he saw a doctor (Dr. Robert Funsch) was September 9, 1957. That was done at the suggestion of his employer's "in-

surance doctor." Thereafter, at the request of his present counsel, he went to see another doctor.

On cross-examination, plaintiff testified: He did not look down to see where he was stepping when, with the cases of empties in his hands, he started to turn to leave the ledge. When he went upstairs after he fell, he saw defendant but did not mention his injuries to him. He was hurt, as he recalls, on a Thursday, but is unable to recall the exact date. He worked on Friday thereafter, all the following week and for four or five more weeks without seeking medical treatment. Although he made several deliveries to defendant's store after he was injured, he never mentioned his injuries to defendant.

The evidence in behalf of defendant was that during the months of April and May, 1957, defendant had two women in his employ, Mrs. Irene Koester and Mrs. Bessie Clausen, and a truck driver, James Nieder. When a soda deliveryman would come to the store, either defendant or Nieder would go down to the shed with him, unlock the shed and basement doors and, after he got his empty bottles, the shed and basement were again locked. To the best of defendant's knowledge, neither of the women employees ever went down to the shed to admit a deliveryman. He never saw plaintiff or any other soda deliveryman walk along the ledge to get empty bottles; it was not necessary to go upon and walk along the ledge to get them. The first information he received of plaintiff's being injured on his premises was when he received a letter from plaintiff's counsel, dated September 30, 1957. Mrs. Clausen testified: It was defendant's and Nieder's job to go down and admit deliverymen. She had no keys to the shed. She never went down and let plaintiff or any deliveryman into the shed in the year 1957 and knows nothing about plaintiff or anyone else falling or getting hurt in the shed. Neither plaintiff nor anyone else ever made any complaint to her that he was hurt down there. Neither did she ever take any empty bottles and put them on the ledge when plaintiff or any other person was picking up empty bottles or at any other time. Mrs. Koester testified to the same effect.

The manager of plaintiff's former employer, Canada Dry Bottling Company, called as a witness by plaintiff, testified on cross-examination that plaintiff never advised him and to the best of his knowledge never advised the company that he had fallen or had sustained injuries at defendant's store. The first knowledge he or the company had of such a claim was received from the Workmen's Compensation Commission.

Plaintiff submitted the merits of his case under Instruction No. 1, which, with the omission of his testimony that he did not look down to see where he was stepping when he turned to leave the ledge, hypothesizes in substance a finding of the facts as testified by plaintiff. Defendant submitted his defenses under Instructions Nos. 4 and 5. No. 5 directed the jury:

> "* * * if you find and believe from the evidence that there was no lady employee of defendant present in the storage area mentioned in evidence at and just prior to the time of plaintiff's alleged fall, if any, then your verdict should be in favor of the defendant * * *."

Instruction No. 4 directed:

> "* * * if you should find and believe that a female employee of defendant's was negligent as submitted to you in Instruction No. 1 nevertheless under the law plaintiff is not entitled to recover if negligence on his part directly contributed to cause his injuries, if any, and * * * if you find and believe from the evidence that just before turning and stepping on said bottle or bottles plaintiff failed to look where he was stepping and failed to see said bottles and that said bottle or bottles, if any, were readily visible * * * if he had looked, * * *; and, if you further find that in so failing to look where he was stepping while on

the ledge, plaintiff failed to exercise ordinary care for his own safety * *, then you are instructed that plaintiff was negligent; * * *," etc.

Plaintiff says that when defendant introduced evidence tending to show that plaintiff's injuries, if any, were not caused by any act of either of his female employees and then caused that issue to be submitted to the jury as one of his defenses, it was prejudicially erroneous for the court also to submit contributory negligence "on the part of the plaintiff, combining with the negligence of a female employee of defendant, in placing the soda bottle on the ledge when defendant's evidence unequivocally proved that there was no female employee down in the area, and no female employee placed a bottle on the ledge while Tomlin was on the ledge." In support of that contention, he cites Rucker v. Alton Railroad Co., 343 Mo. 929, 123 S.W.2d 24; Picarella v. Great Atlantic & Pacific Tea Co., Mo. App., 316 S.W.2d 642; Miller v. Riss & Co., Mo., 259 S.W.2d 366. Defendant concedes that the first two of these cases support plaintiff's position but insists that they were wrongly ruled and should be overruled. (Miller v. Riss & Co., as we read it, sheds no light upon the question here presented.)

In the Rucker case, supra, plaintiff's decedent, a 15 year old boy, was struck and killed when a truck driven westwardly by decedent was struck by defendant's northbound passenger train at an intersection of defendant's north-south tracks with an east-west street in Virdin, Illinois. The petition alleged defendant's failure to ring the bell and sound the whistle. The answer was a general denial and contributory negligence. Trial of the case resulted in a verdict and judgment for defendant, from which plaintiff appealed to this court. The opinion reflects that the evidence in behalf of plaintiff was that no warning of the approach of the train was given and that decedent drove across the tracks at a speed of four or five miles an hour without stopping. Defendant's engineer, who saw decedent's truck approaching, testified that the truck, before

entering upon the mainline track, stopped with its wheels on the west rail of a switch track situate 8 to 15 feet east of the mainline track and then moved forward upon the mainline. Division One of this court held that defendant's submission instruction directing a verdict for defendant if the jury found that decedent did not stop and listen was broader than defendant's pleading and prejudicially erroneous. The opinion went further, however, and held, 123 S.W.2d loc. cit. 26: "There is another rule in this state which has been violated by this instruction and that is the rule holding that a *litigant* cannot submit his case on a theory which contradicts his own positive evidence and theory. [Defendant's] engineer testified that 'the automobile stopped with the wheels on the west rail of that passing track.' * * * Unless there is something in the record to indicate that such evidence was due to mistake, 'a party cannot be permitted * * * to later deny what he, himself, claims to be the truth and that is why he is bound by the evidence of the witnesses he produces to prove the allegations of his pleadings.' * * * The respondent here cannot by its evidence take the unequivocal position that the decedent stopped before entering upon the track, and then in its instruction deny recovery by the plaintiff on the ground the decedent failed to stop before entering the crossing." (Emphasis supplied.)

In Picarella, supra, 316 S.W.2d 642, plaintiff, a customer at defendant's grocery store, alleged and her evidence tended to show injuries sustained by her when a bottle of soda fell through a hole in the basket of a shopping cart and struck her foot as she pushed the cart along the aisles of defendant's store and that plaintiff thereafter saw the hole in the basket through which the bottle fell. Defendant's manager testified in behalf of defendant that tests showed that the hole in the basket was too small to permit the bottle to fall through it. The trial court, at the instance of defendant, gave, first, an instruction directing a verdict for defendant if

the jury found that the bottle was too large to go through the hole; second, an instruction submitting the issue of plaintiff's contributory negligence in placing the bottle near the hole in the basket after she saw or could have seen the hole and knew or should have known that the bottle could fall through it, and directing a verdict for defendant if the jury so found the facts to be. On plaintiff's appeal, following adverse verdict and judgment, the St. Louis Court of Appeals held that defendant was bound by the manager's testimony and was, therefore, precluded from submitting plaintiff's contributory negligence upon the theory predicated in the instruction. In reaching that conclusion, the court, among other things, said, 316 S.W.2d loc. cit. 650: "For if, as the cases hold, the plaintiff cannot avail himself of evidence introduced by or adduced from the defendant and his witnesses which is contradictory to his own testimony and the theory of his case, then it should be equally true that the defendant, on the issue of contributory negligence, should not be entitled to avail himself of the plaintiff's evidence which directly contradicts his own. That is what the Rucker case holds, and so far as we have been able to find it has never been overruled or distinguished. As the last decision of our Supreme Court on the point, we are, of course, required to follow it."

It is defendant's contention that the Rucker and Picarella cases are completely out of line with the great weight of Missouri law to the effect the defendant is entitled to as many defenses as he may have under the law and that an instruction on contributory negligence founded upon facts and circumstances in evidence warranting its submission is not necessarily inconsistent with defendant's other *defensive* pleas (1) that no such casualty occurred or (2) if it did occur, it was not caused by any negligent act or omission of defendant or of his servant or agent.

Plaintiff on this appeal does not challenge the sufficiency of the evidence to support each and both of the issues submitted under defendant's given Instructions 5 and 4. The evidence adduced on behalf of defendant warranted a finding that neither of defendant's female employees was present in the shed at or just prior to the time of plaintiff's alleged fall and that the verdict should be in favor of defendant, as submitted in Instruction 5. The admissions of plaintiff on cross-examination that he did not look before stepping on the bottle in the manner and under the circumstances as testified by him on direct examination warranted a finding of his contributory negligence, as submitted in Instruction 4. If plaintiff's contention is to prevail under the ruling announced in Rucker and Picarella, defendant would be in the dilemma of being forced to select and submit at his peril only one of his valid defenses, thereby being deprived, for no good reason, of the very defense which, if submitted, may have gained him acquittance of the liability charged.

■ S.Ct. Rule 55.09, V.A.M.R., places upon defendant the duty to plead his "defenses"; S.Ct. Rule 55.10 requires him affirmatively to plead contributory negligence in order to avail himself of such defense; S.Ct. Rule 55.12 permits the pleading of alternative and hypothetical defenses and specifically permits the pleading of as many defenses as he has. This court has long since noted that the situation of a defendant is quite different from that of the plaintiff. The plaintiff goes into court voluntarily. In a negligence case such as this he seeks a money judgment. Defendant, in court without his consent, cannot dismiss and start anew; he must plead and submit each and every submissible defense available to him, lest they be forever lost. Consequently, he not only has the right to plead but he must submit as many defenses as he has or forfeit those he does not submit. Kenefick-Hammond Co. v. Norwich Union Fire Ins. Soc., 205 Mo. 294, 103 S.W. 957, 960, and cases therein cited. And he is not to be deprived of this right by plaintiff, nor by an erroneous ruling of a court. Knorp

v. Thompson, 352 Mo. 44, 175 S.W.2d 889, 899.

Both by virtue of the case law above cited and the foregoing rules of this court, defendant unquestionably was entitled to *plead* both the general issue and contributory negligence. See treatise of Judges Laurance M. Hyde and James M. Douglas on "The Civil Code Act of 1943" as published in Carr, Missouri Civil Procedure, Vol. 2, pp. 540–543. Although being fully justified in so pleading, is defendant nevertheless to be precluded from submitting both issues if his own evidence tends to show that plaintiff, if injured, was not injured by any act of negligence on the part of defendant? The Rucker and Picarella cases seem clearly so to hold. Should they be longer followed? We think not.

The Rucker case, 123 S.W.2d loc. cit. 26, states that a *litigant* cannot submit his case upon evidence which contradicts his own positive evidence and theory. The Picarella case, perforce the decision of this court in the Rucker case, likewise holds to the same effect. It is true that a *plaintiff may not predicate recovery* upon a theory which is contrary to his own positive evidence; and it is worthy of note that, with the one exception of Miller v. Riss & Co., supra, all of the cases cited in support of the decisions in those cases deal with the limitations placed upon a *plaintiff seeking to recover damages* under inconsistent pleadings or inconsistent evidentiary theories.

Of course, if there is no fact or circumstance in the evidence of either of the parties tending to show plaintiff's contributory negligence, it would be error to submit such an issue but, if there is such evidence, be it direct or circumstantial, and irrespective of whether it comes from defendant or plaintiff, then, absent some compelling reason not shown in these cases, defendant has the right to submit that issue to the jury. In the determination of whether such evidence exists, the court should take into account the admitted acts and conduct of the plaintiff which ipso facto may support a finding that he negligently contributed to his injuries, if any. Miller v. Riss & Co., Mo., 259 S.W.2d 366; Adkins v. Boss, Mo., 290 S.W.2d 139, 143 [3]. The evidence in this case presents a classical example of why that rule should be here followed. Here the evidence adduced in behalf of defendant would have warranted the jury in finding: (1) that the fall by which plaintiff claimed to have been injured did not in fact occur; (2) but, if the jury should believe plaintiff's evidence that the fall did occur, it nevertheless could consistently find that the fall did not occur by reason of any negligent act of defendant's female employee as testified by plaintiff; and (3) if the jury should believe that the fall did occur and was caused by the negligence of defendant's employee, the jury yet consistently could find under plaintiff's own admission that he was guilty of contributory negligence in that he did not look before stepping upon the bottle over which he said he tripped.

The basic questions presented in the Rucker and Picarella cases differ in degree only from the question here presented. In Rucker, defendant's engineer testified that plaintiff's decedent did stop but instantly started up and went upon the track. Defendant's contributory negligence instruction, however, submitted a finding that decedent failed to stop and listen. Of course, such a submission was in conflict with the testimony of defendant's engineer, but a finding of decedent's contributory negligence was nevertheless warranted if the jury should have believed from the testimony of plaintiff's witnesses that decedent went upon the tracks immediately in front of the train *without stopping*, if stopping were necessary to effective listening. In Picarella, defendant's manager testified that the soda bottle which allegedly fell through the hole in the shopping basket could not go through said hole. The proffer of defendant's contributory negligence instruction was predicated upon a finding that

plaintiff saw, or by the exercise of due care could have seen, the hole in the basket before placing the soda bottle near the hole. In each of these cases, therefore, there was evidence to warrant submission of contributory negligence. Therefore, even though defendant had adduced evidence inconsistent with one of its defensive pleas, yet the issue of plaintiff's contributory negligence nevertheless was submissible in each of them. To the extent that the Rucker and Picarella cases are in conflict with the views here expressed and rulings here made, they should no longer be followed.

Plaintiff's final contention is that the court erred in admitting the army medical records introduced in evidence by defendant. He concedes they impeached his testimony to the effect that a presently existing malfunctioning condition of his lower back was attributable solely to his fall in defendant's shed and is not in anywise attributable to an injury to his lower back sustained some five years before his service in the army, as is shown by said records. He insists that said records were never properly qualified under the Uniform Business Records Act, §§ 490.660–490.690, and were hearsay. These records were produced at the trial by Angelo J. Tsenes, Assistant Chief of the Special Actions Branch, U. S. Army Records Center of the Adjutant General's Office. His testimony shows: The army records center has custody of the individual personnel records, including the medical records, of all separated army personnel. One of the functions of the department with which he is connected is to furnish "record" service in litigation where the records are pertinent. The documents produced by him are photostatic copies of the original records. He is familiar with the manner of the keeping of army medical hospital records, both through continual observance for more than 13 years of such records and also by the fact that he has personal knowledge of the army regulations under which they are required to be and are kept, and that such records comply with those regulations and are made in accordance with the normal course of army business. On cross-examination, the witness admitted that he had no personal knowledge of the accuracy of these entries on these specific records or by whom and when they were actually made.

The sole authority cited in behalf of plaintiff's contention is Conser v. Atchison, Topeka & Santa Fe Ry. Co., Mo., 266 S.W. 2d 587, wherein it was held that the evidence did not make a prima facie showing of their admissibility. The facts in that case are distinguishable from those here shown. In that case the records were produced by a Veterans Administration attorney in the St. Louis regional office who had nothing to do with their keeping and no knowledge as to the manner of their keeping. Neither was there any showing of the mode of their preparation or when they were made. We have no such situation here.

Section 490.680 makes these records competent evidence (1) when the legal custodian of them identifies them as genuine, testifies that they were made in the regular course of business at or near the time of the act, condition or event and details the mode of their preparation; and (2) if in the opinion of the court, the sources of information, method and time of preparation were such as to justify their admission. We think the evidence herein given by an official of the department having custody of said records warranted the court in finding, as it did find, that the sources of information, method and time of preparation were such as to justify their admission. The Act should be liberally construed to effectuate its purpose. For the court to require the attendance and testimony of the personnel who cooperated in the making of the medical records of the millions of those formerly in the military services of the United States as a prerequisite of their admission into evidence would defeat the purpose of the making and preservation of those records. We are unwilling to say

that under the evidence here shown the court erred in their admission. See *Allen v. St. Louis Public Service Co.*, 365 Mo. 677, 285 S.W.2d 663, 666 [1–3], 55 A.L.R. 2d 1022.

For the reasons hereinabove stated, the judgment is affirmed.

All concur.