**Eunice and John FOGARTY,
Appellants,**

v.

**J.C. PENNEY COMPANY,
INC. Respondent.**

**No. WD 38444.**

Missouri Court of Appeals,
Western District.

July 14, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 1, 1987.

Application to Transfer Denied
Oct. 13, 1987.

John Kurtz, Kansas City, for appellants.

James S. Stubbs, David S. Baker, Kansas City, for respondent.

Before BERREY, P.J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

This is an appeal by plaintiffs Eunice M. Fogarty and her son, John Joseph Fogarty, from judgments upon jury verdicts in favor of defendant J.C. Penney Company in the Fogartys' action for damages for false arrest.

Mrs. Fogarty and her 13–year-old son, Johnny, went to defendant's Sedalia, Missouri, store on November 25, 1978 and selected a pair of shoes for Johnny. The clerk told Johnny he could wear the shoes home. At the cashier's counter Johnny told his mother he would meet her at the car and he left the store wearing the shoes.

Mrs. Fogarty presented her J.C. Penney credit card. The cashier told her something was wrong with the card and she would have to see the credit department at the back of the store. At the credit department Mrs. Fogarty was informed she could not charge anything on the card. She told the store employee that her son had left the store wearing the shoes, who answered that she would have to get them and bring them back.

Mrs. Fogarty went out the front door of the store. As she was standing on the sidewalk, according to her testimony, trying to get the attention of her son, motioning to him to come to her, two men emerged from the store. They proved to be Toburen, the merchandise manager who was in charge of the store on the date of the incident, and Smith, a "management associate". "Ma'am, where are you going?" one of them asked. They told her to come back in the store. Johnny now joined his mother and they and the two men went back into the store, one man on either side of Mrs. Fogarty and Johnny following behind. The men conducted them to a small room. The manager told her to stay in the room with Mr. Smith. He left, leaving

Mrs. Fogarty and Johnny in the room with Smith. He was gone about 20 minutes before he returned. During this time Mrs. Fogarty attempted to explain to Smith what had happened. She testified: "He didn't say one word to me."

When Toburen returned to the room he told Mrs. Fogarty she could not charge, and that she and Johnny "could go now". Mrs. Fogarty asked for Johnny's old shoes, which she had left at the cashier's desk. Toburen got the shoes. Johnny put them on and he and his mother left the store. They had spent a total of 40 or 45 minutes at the store.

Toburen's own testimony was that he had been in his office when "a page was made for management to the selling floor". He proceeded to the selling floor, where an employee told him "that a customer had made a purchase that the credit, there was a problem, and that the customer and the merchandise had left the store." Management associate Smith joined him and they saw Mrs. Fogarty "walking away from the store, down the sidewalk". Toburen called to her. She stopped and after a brief conversation she, along with Johnny who had by now joined them, accompanied Toburen and Smith back into the store.

The procedure followed by Toburen and Smith was in strict compliance with a Penney handbook for dealing with suspected shoplifters.

I

Plaintiffs allege trial error in giving defendant's verdict director which submitted defendant's affirmative defense based upon § 537.125, RSMo 1978 (amended 1985). The instruction given was MAI 32.-13 (1978 Revision). It read as follows:

Your verdict must be for defendant if you believe:

First, defendant J.C. Penney Company was engaged in mercantile trade, and

Second, defendant had reasonable cause to believe that plaintiff Eunice M. Fogarty wrongfully had taken or was taking merchandise, and

Third, plaintiff Eunice M. Fogarty's restraint was made in a reasonable manner

and for a reasonable length of time for the purpose of investigation.

An identical instruction, except for the name, was given in John's case.

Plaintiffs argue that the affirmative defense instruction was not supported by any evidence in the case, and argue particularly that it was directly contrary to the position taken by defendant throughout the trial. Plaintiffs point to the testimony of defendant's merchandise manager, Toburen, that "shoplifting ... was something never on my mind. It was a problem with credit and not a shoplifting problem". At another point, Toburen when asked if he had any reasonable cause to believe Mrs. Fogarty was stealing, answered, "No, I didn't". The opening statement and closing argument of defendant's counsel followed that line.

■ The affirmative defense, however, was not wholly at odds with defendant's theory and testimony. While plaintiff was not suspected of "shoplifting" or "stealing", the term "wrongful taking" as used in § 537.125 and in MAI 32.13 (1978 Revision) includes more than shoplifting or stealing. It includes "any other wrongful appropriation of merchandise". § 537.125.-1(4); *see Teel v. May Department Stores Co.*, 348 Mo. 696, 703, 155 S.W.2d 74, 77 (1941). Here, Johnny had left the store wearing the shoes and them unpaid for. As it turned out, Mrs. Fogarty was not permitted to charge the merchandise. She apparently did not have the cash or check to pay for it. Still the merchandise had gone out the store. At the time Toburen and Smith entered the picture, Mrs. Fogarty herself had left the store. As usual in these cases, there was no time to make a leisurely investigation. Toburen and Smith must act quickly if at all, or so they supposed. Acting on incomplete information they accosted Mrs. Fogarty. Mrs. Fogarty was innocent of any wrongful purpose but was acting in all good faith. But § 537.125 allows the merchant some latitude to act upon reasonable appearances, so long as he acts reasonably. *See Teel v. May Department Stores Co.*, 155 S.W.2d at 77. The

evidence therefore supported the submission of the affirmative defense under § 537.125.

■ Even if defendant's own evidence and theory were opposed to the theory of the affirmative defense instruction, as plaintiffs argue, still it was entitled to submit the defense if there was any construction of the evidence which supported it, no matter from whose side the evidence came. That is the holding of *Overton v. Tesson*, 355 S.W.2d 909, 912 (Mo.1962), following *Tomlin v. Alford*, 351 S.W.2d 705 (Mo. 1961). The *plaintiff* may not submit on a theory directly opposed to his own testimony and theory, but the *defendant* is not subject to that restriction in submitting an affirmative defense. *Tomlin v. Alford*, 351 S.W.2d at 711. He may submit an affirmative defense supported by plaintiff's evidence, even if his testimony and his theory have disclaimed and disowned the defense.

The court did not err in submitting the affirmative defense instruction.

## II

■ For her second point, plaintiff Eunice Fogarty complains of a withdrawal instruction submitted by defendant which said:

The evidence of plaintiff Eunice M. Fogarty's harassment, embarrassment, humiliation, fear of shopping and use of credit cards flowing from the acts or activities related to the disapproval of the credit card purchase is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

Defendant's point in requesting this instruction was to confine the jury to consideration of damages following her being hailed by Toburen and Smith on the sidewalk in front of the store and to remove from their consideration any embarrassment she had suffered before that time from having her credit card challenged. In seeking so to limit the jury, Mrs. Fogarty argues, the instruction went beyond its purpose. She says the instruction could have been understood by the jury as removing from their consideration not only the embarrassment suffered because of the credit rejection, but also her distress from being hailed and conducted back into the store by Toburen and Smith and detained there, for all of this "flowed from the acts or activities related to the disapproval of the credit card purchase".

Plaintiff's criticism of the withdrawal instruction has some validity, but we think she suffered no prejudice as a result of the instruction. We note first that the jury found against plaintiff on liability and never reached the issue of damages. Proof of damages was not an essential part of plaintiff's case, and the jury was not required to find any damages at all in order to return a verdict for plaintiff. 35 C.J.S., False Imprisonment § 63 (1960); *Oliver v. Kessler*, 95 S.W.2d 1226, 1229 (Mo.App.1936). MAI–23.04, which was given as plaintiff's verdict director, does not require any finding of damages. The withdrawal instruction by its terms would therefore not have prevented a verdict for plaintiff on the issue of liability.

If, however, as plaintiff argues, the instruction had the potential of confusing the jury in its consideration of the liability issue, that potential was defused by the jury arguments of counsel. The attorneys for the plaintiffs and the defendant both adverted to the withdrawal instruction and agreed upon its meaning, namely, that any damages to be allowed to Mrs. Fogarty and Johnny were only those following their return to the store. Said Mr. Kurtz for plaintiff:

You know, [Mrs. Fogarty and Johnny] accepted an awful lot out there that day. The judge has read you an instruction that is the same thing Mrs. Fogarty said on the stand. Everything up to the point where Mr. Toburen came to them outside does not contribute to damages to her. She accepted all that. She accepted getting the card, come into the store, go to the cashier, go to credit, go outside. She accepted all of that. But at the point where we say the law started to be broken is where the damages start.

Mr. Stubbs for the defendant said:

I would call to your attention once again the withdrawal instructions that

the court has given to you. And under the law, and that is the law that the judge is informing you of in the instruction, you may not consider what happened prior to the time that she started coming back into the store.... And I am sure that it was embarrassing when the credit purchase was disapproved. But we are not here about that embarrassment. And as the judge has instructed you, that embarrassment you may not consider in even considering whether or not she was restrained ...

Attorneys' arguments could probably never correct any positive misdirection of a jury instruction, but we think they may in rare cases be considered in clearing up a mere possibility of vagueness or confusion.

### III

■ Appellant Eunice Fogarty's third point is a complaint of the trial court's denial of permission to file an amended petition adding a new count based upon Penney's making an alleged unlawful inquiry about Mrs. Fogarty's credit history, in violation of 15 U.S.C.A. § 1681 (1982). The alleged violation took place in January 1985, while the alleged unlawful arrest had occurred in 1978. The amended petition was tendered approximately one month before a long standing trial date. The court's denial was based at least in part upon its appearance near the appointed trial date, when the case was already old.

The burden of plaintiff's argument here is that plaintiff should have been permitted to try the claims together. The filing of an amended petition will not assure that. The two claims could still be separated for trial. Rule 66.02. We find no abuse of discretion in the trial court's rejection of the amended petition, nor any prejudice to Mrs. Fogarty in the trial of her false arrest claim. *See Baker v. City of Kansas City*, 671 S.W.2d 325, 329 (Mo.App.1984).

The judgments are affirmed.

All concur.