STATE of Missouri, ex rel., Terri L. HOBBS, Individually and as Next Friend of Casey L. McCaulley, Appellants,

v.

Robert TUCKNESS, Respondent.

No. WD 53208.

Missouri Court of Appeals, Western District.

July 29, 1997.

Christopher Smith, Kansas City, for Appellants.

Gail Berkowitz, Kansas City, for Respondent.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

LOWENSTEIN, Judge.

## FACTS

The State of Missouri (State), on behalf of Terri L. Hobbs (Hobbs), filed a combined petition for declaration of paternity under the Missouri Uniform Parentage Act, naming Robert Tuckness (Tuckness), as the father of Hobbs' minor child, Casey L. McCaulley, born February 3, 1980. The trial court, in this second trial on the issue of paternity, held in favor of Tuckness.

Hobbs and Tuckness met in October 1978 while Tuckness, an armed service member stationed in the Federal Republic of Germany, was on leave in Kansas City. Tuckness arrived in Kansas City in September 1978, and returned to Germany sometime in November 1978. Both Hobbs and Tuckness admit they engaged in sexual relations, but the question was whether they had relations at the time of conception. Tuckness testified to sexual relations in October 1978, long before the child was conceived, while Hobbs testified to several intimate encounters beginning in May or June of 1979, after Tuckness had been discharged from the service and returned to the States.

The results from the first of two court ordered DNA blood tests indicated a probability of paternity of 99.99% and a Combined Paternity Index of 4,813,941 to 1. The Index indicates how many men would be excluded from paternity compared to the alleged father. The second test, which combined the variables from the first test to a second study of the same blood sample as to different variables, indicated a probability of paternity of 99.99% and a Combined Paternity Index of 777,585,231 to 1.

At the first trial, the court entered an order denying the State's petition for declaration of paternity and child support, noted the DNA testing reports, but relied upon evidence introduced by Tuckness. The trial court found that during the "relevant period of conception," he was stationed in Germany on active duty and was not on leave in Kansas City. The State moved for a new trial, asserting the trial judge improperly contacted the military to obtain Tuckness' records and did not give the state access to that

evidence before the judgment. The motion was sustained and a new trial was held.

In the second trial, the results of which form the basis for this appeal, the trial court admitted both reports of DNA testing results, expert testimony about the DNA testing, Hobbs' testimony, and the testimony of Casey McCaulley, the child. The trial court found that based on the blood tests and testimony, Tuckness was presumed to be the natural father under § 210.822, subd. 1(5), RSMo 1994.[1] To rebut the presumption of paternity, Tuckness testified and again offered into evidence, over the State's objection, four exhibits of his military records. Tuckness testified to having sex with Hobbs but denied being in this country at the time the child was conceived. Tuckness used his military records to corroborate his assertion that he was in Germany during at the time of conception, and could only have been in Kansas City if he were on a valid leave from the military.

The exhibits in controversy are as follows:

a) Exhibit 8 was a set of military records from the National Personnel Records Center received pursuant to subpoena. The set of records purported to be the complete personnel file of Tuckness, although it was pointed out at trial that the set of records do not reference the September to October leave and the records indicate that Tuckness was sent back to the U.S. prior to his testimony of July 28, 1979. No custodian was identified and the evidence was offered without foundation by Tuckness.

b) Exhibit 9 was an affidavit from Carolyn Shaw, Reserve Component Processing Division, and an accompanying letter. The letter was introduced to reflect that Tuckness' leave time was September 30, 1978 through November 10, 1978, but the exact dates when he departed and returned were unknown. This letter was sent directly to Tuckness' counsel and was drafted as a result of litigation. The custodian of this record would be Mrs. Shaw, and the substance of the letter was a summary of other military documents which were not included with the exhibit. Neither the af-

fidavit nor the accompanying letter were identified at trial by Tuckness.

c) Exhibit 10 consisted of Army leave and earnings statements. These statements were offered to show the leave time during the course of enlistment when Tuckness may have been in the U.S., although the statements do not indicate where the leave was taken. Tuckness identified the statements as being in his possession, but did not indicate the mode of preparation.

d) Exhibit 11 was a document identified as a DDT (Department of Defense) Form 214. The form contained military service information including entry date, discharge date, and location where stationed, but did not show leave information. The Form was offered to show that Tuckness was in the U.S. in July and the date of discharge from active to reserve status was July 28, 1979. Tuckness identified the document as being in his possession, but made no offer of mode of preparation; he claimed that he was the proper custodian due to his possession.

The court rendered its judgment finding Tuckness' exhibits admissible and found, under § 210.822, subd. 2, that there was clear and convincing evidence that Tuckness did not have access to the mother of the minor child for the purpose of conceiving the child, thus rebutting the presumption of paternity, and therefore, dismissed the petition. This appeal followed.

## ANALYSIS

The first issue is whether Tuckness' military records were admissible under the Business Records exception to the hearsay rule. Hearsay evidence is defined as an out-of-court statement offered in evidence to prove the matter asserted. *State v. Chambers*, 891 S.W.2d 93, 104 (Mo. banc 1994). The purpose of the hearsay rule is to ensure documents admitted in evidence are trustworthy by giving the party against whom the documents are offered the opportunity to cross-examine the preparer or proper custodian of the documents. *Bynote v. National Super*

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

**654**

*Markets, Inc.,* 891 S.W.2d 117, 120 (Mo. banc 1995).

■■■ The erroneous admission of evidence in a court tried case does not provide ground for reversal unless insufficient evidence remains to support the court's judgment after the evidence that was improperly admitted is disregarded. *Whitley v. Whitley,* 778 S.W.2d 233 (Mo.App.1989). In a court-tried case, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■■ The State argued that the military exhibits introduced by Tuckness constitute hearsay and were admitted without evidentiary foundation. The State, at trial, asserted that Tuckness did not satisfy the requirements of § 490.680, and therefore, the evidence was not competent nor admissible. Under § 490.680, The Uniform Business Records as Evidence Law, records are competent evidence when,

A record of an act, condition, or event, shall, insofar as relevant, be competent evidence *if the custodian or other qualified witness testifies to its identity and the mode of its preparation,* and *if it was made in the regular course of business,* at or near the time of the act, condition, or event, *and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission* (Emphasis added).

■■ The first issue is whether Tuckness is a custodian or qualified witness, under § 490.680, to introduce Exhibits 10 and 11. A "custodian" is defined as a person that has custody of property, and "custody" is defined as the care and control of something. Black's Law Dictionary 384 (6th ed.1990). A qualified witness need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted. *U.S. v. Franco,* 874 F.2d 1136, 1139 (7th Cir.1989).

Although the purpose of the Business Records Law is to enlarge the operation of the common law rule providing for the admission of business records as an exception to the hearsay rule, when the record is not of the character comprehended by the Business Records Law, then it is relegated to the status of hearsay and is not admissible in evidence. *Kitchen v. Wilson,* 335 S.W.2d 38, 43 (Mo.1960).

*Tomlin v. Alford,* 351 S.W.2d 705 (Mo. 1961) provides guidance in properly qualifying military records. In *Tomlin,* the defendant in a personal injury case offered plaintiff's military records to impeach the plaintiff's claim.

[R]ecords were produced at the trial by Angelo J. Tsenes, Assistant Chief of the Special Actions Branch, U.S. Army Records Center of the Adjutant General's Office. His testimony shows: The army records center has custody of the individual personnel records, including the medical records, of all separated army personnel. One of the functions of the department with which he is connected is to furnish "record" service in litigation where the records are pertinent. The documents produced by him are photostatic copies of the original records. He is familiar with the manner of the keeping of army medical hospital records, both through continual observance for more than 13 years of such records and also by the fact that he has personal knowledge of the army regulations under which they are required to be and are kept, and that such records comply with those regulations and are made in accordance with the normal course of army business.

*Tomlin v. Alford,* 351 S.W.2d at 712.

The *Tomlin* court relied on the requirements within § 490.680, and found that the admission was proper even though the Army custodian admitted that he had no personal knowledge of the accuracy of the entries on those specific records or by whom and when they were actually made.

The *Tomlin* finding was followed by *Griggs v. Riley,* 489 S.W.2d 469 (Mo.App. 1972), where the defendant in an automobile accident objected to the admission of certain military records from Chanute Field Air Force Hospital.

The records were identified by a member of the Judge Advocate's office, who stated that the records were received in response to a subpoena which he forwarded to Chanute Hospital. He had no personal knowledge of the manner in which the records were kept. Nor did he testify concerning any regulations prescribing the method of keeping military hospital records or that these records appeared to have been kept in accord with such regulations. He concluded that the records were made in the regular course of business because, "It was sent for and it came down."

*Griggs v. Riley,* 489 S.W.2d at 475.

The *Griggs* court found the identification to be totally inadequate to qualify the records for admission under § 490.680, and the foundation laid was in no way comparable to that in *Tomlin.* Because of the error in admitting the Chanute records, the cause was reversed and remanded.

What distinguishes *Griggs* from *Tomlin* is the witness' role as to the evidence. In *Tomlin,* the witness properly established a custodial relationship to the evidence, while in *Griggs,* the witness, although a military officer, only served as a conduit to the flow of records and could not testify to the mode of preparation. Tuckness' role is more similar to *Griggs.* Tuckness was a member of the Armed Services and did come into possession of the earnings statements and the DDT Form 214, but the control of these records stayed with the military. Tuckness could not testify as to: who kept the records, how the records were kept, their mode of preparation, or how the records' complied with military regulations. Tuckness received copies for his own reference, but these copies were not designed to supersede the military's record keeping, and Tuckness cannot verify the truth, accuracy or completeness of the records. Exhibits 8 through 11 could be qualified by a custodian of records within the Armed Services.

■ The admission of Exhibit 9 implicates another part of the Business Record exception. The term "regular course of business" as used in the Business Records Law "must find its meaning in the inherent nature of the business in question and in the methods systematically employed for the conduct of the business as a business." *Kitchen v. Wilson,* 335 S.W.2d at 43, quoting *Palmer v. Hoffman,* 318 U.S. 109, 115; 63 S.Ct. 477, 481, 87 L.Ed. 645. Exhibit 9 was not prepared in the regular course of business; the affidavit and accompanying statement were made as a result of litigation. A narrative summary prepared from other data, and not a part of the exhibit, negates the idea that the document was in fact a business record. *Kitchen v. Wilson,* 335 S.W.2d at 44. Also, there is concern that the summary involved hearsay upon hearsay.

■ The last part of the Business Record exception involves the affidavit requirements of § 490.692. The State asserted at trial that Exhibits' 8 and 9 did not comply with the Statute. § 490.692 states in pertinent part:

1. *Any records or copies of records* reproduced in the ordinary course of business ... that would be admissible under sections 490.660 to 490.690 *shall be admissible as a business record,* subject to other substantive or procedural objections, in any court in this state *upon the affidavit of the person who would otherwise provide the prerequisites of sections 490.660 to 490.690,* that the records attached to the affidavit were kept as required by section 490.680.

2. *No party shall be permitted to offer such business records* into evidence pursuant to this section *unless all other parties to the action have been served with copies of such records and such affidavit* at least seven days prior to the day upon which trial of the cause commences. (Emphasis added).

Subsection 3 of § 490.692 offers an example of the form and content permitted in the affidavit.[2] Neither Exhibit 8 or 9 reasonably

**2.** § 490.692.3 states in pertinent part:

AFFIDAVIT

Before me, the undersigned authority, personally appeared .........., who, being by me duly sworn, deposed as follows:

complied with the statutory requirements. Exhibit 8, the personnel records, was sent with a cover sheet that was to serve as the affidavit, titled "Reply Concerning Military Records," which only stated that copies of requested military personnel records were attached. The cover sheet did not specify the number of pages attached or whether the records were complete; only that the group of records complied with the request. Exhibit 9, which was in the form of an affidavit, did not indicate what records were used in the compilation of the summary, who kept the records, or the mode of preparation, and the affidavit was not made at or near the act or event. Considering the admission of Exhibit 9, the trial court noted, "I suspect that they operate under the rules of their own." The statement reflects the difficulty obtaining a person's military records in a sufficient state to be introduced in evidence in compliance with the Business Records exception. Allowing a litigant to be the "custodian" of another entity's records concerning the litigant himself seems to run contrary to the spirit of § 490.692.

The military records were not properly in evidence and should not have been considered in support of the judgment. The trial court erred in admitting the four military records into evidence as they did not comply with the requirements of § 490.680 and § 490.692. First, Tuckness was erroneously established as a custodian or qualified witness for Exhibits 10 and 11. Second, the affidavit and accompanying statement of Exhibit 9 were not records made in the regular course of business. Third, Exhibit 9 was not made at or near the act or occurrence. Finally, Tuckness did not submit Exhibits 8 and 9 with a proper affidavit pursuant to § 490.692. The question remains: Does the testimony of Tuckness, if believed, allow him to prevail?

The ultimate issue is whether there was sufficient evidence, without the inadmissible exhibits, to sustain Tuckness' burden of proof under § 210.822. In reviewing the sufficiency of the evidence, this court will view the evidence in the light most favorable to the verdict. *Ugbaja v. Sumpter*, 821 S.W.2d 557, 559 (Mo.App.1991). This court defers to the trial court's assessment of credibility. *Id.*

Section 210.822 delineates the presumption of paternity, and the rebuttal of the presumption.

1. A man is presumed to be the natural father of a child if: ... (5) The experts conclude that the blood tests show that the alleged parent is not excluded and that the probability of paternity is ninety-eight percent or higher, using a prior probability of 0.5.

2. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence....

The clear and convincing standard refers to evidence which instantly tilts the scales in the affirmative when weighed against the evidence in opposition, and the fact finder's mind is left with an abiding conviction that the evidence is true. *In re Marriage of Jennings*, 910 S.W.2d 760, 763 (Mo.App. 1995).

The trial court, in its judgment, addressed the presumption of paternity.

The Court has been presented with oral and documentary evidence which established that the Respondent is presumed to be the father of Casey L. McCaulley by virtue of Sec. 210.822(5) RSMo.

The oral evidence favorable to the result is as follows: Tuckness testified that he met Hobbs in October of 1978 when he was in the U.S. Army. He enlisted in July of 1976, and was stationed in Giessen, Germany from 1977

My name is ........., I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:
I am the custodian of the records of ........... Attached hereto are ......... pages of records from .......... These .......... pages of records are kept by .......... in the regular course of business, and it was the regular course of business of .......... for an employee or representative of

.......... with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time of the act, event, condition, opinion or diagnosis. The records attached hereto are the original or exact duplicates of the original.

....................

Affiant

to 1979. Tuckness stated that he came home as a civilian after leaving his assignment in Germany at the end of July 1979, with only one leave between September 30 through November 10 of 1978. After leaving Germany in late July, he stopped in Fort Dix, New Jersey and came home to Kansas City the next day.

Tuckness testified that he was not out of Germany at any time in the months of April, May, or June. He could not have come back to the states because it required getting on a plane, which meant authorization from the commander and he could not have traveled very far within the twenty-four hours between work shifts.

Tuckness asserted that he was not the father of Casey McCaulley, nor had he ever claimed to be the father. He claimed the only sexual contact he had with Hobbs was in October 1978 and they had no intimate contact after he returned in July of 1979. Tuckness admitted knowing the child, but only as his daughter's friend.

Since the documenting evidence was improperly admitted, and it is questionable whether the oral evidence in this case is or was sufficient to refute the presumption and support the judgment, the case is remanded for a new trial.

As stated before, the court is concerned about the ability of one in Tuckness' position to obtain, in admissible form, relevant military records to prove a defense to a paternity action. The ultimate question remains for another day—may the testimony of the man, uncorroborated, overcame the presumption created by the DNA testing to supply the clear and convincing evidence needed.

The trial court's finding is reversed and remanded for a new trial.

All concur.