Mark A. TEBOW, Respondent,

v.

DIRECTOR OF REVENUE, State of Missouri, Appellant.

No. WD 51727.

Missouri Court of Appeals, Western District.

April 16, 1996.

Rehearing Denied May 28, 1996.

Ronald Pridgin, Jefferson City, for appellant.

John Ryan, Jr., Grandview, for respondent.

Before SPINDEN, P.J., and HANNA and LAURA DENVIR STITH, JJ.

SPINDEN, Presiding Judge.

The Department of Revenue's director suspended Mark A. Tebow's driving privileges pursuant to the provisions of §§ 302.500–302.541, RSMo 1994. The circuit court concluded that the director did not meet her burden of proving a lawful basis for the suspension, and it reversed the suspension order and reinstated Tebow's driving privileges. We reverse and remand.

On February 4, 1995, at approximately 2:30 A.M., a sheriff's deputy saw a truck traveling on Route C in Cass County at high speed.[1] The deputy's radar indicated that the truck's speed was 89 MPH. The speed

---

1. Because the deputy died before the hearing, the director's statement of facts were taken from the police report and other documents in the record.

limit was 55 MPH. The deputy used his patrol car's emergency lights to stop the truck. After pulling the truck over, Tebow got out to talk to the deputy. Tebow was alone in the truck.

The deputy smelled the odor of an intoxicating beverage on Tebow's breath, and Tebow admitted that he had drunk beer earlier. The deputy asked Tebow to undergo several field sobriety tests, including the gaze nystagmus test, the walk-and-turn test and the one-leg stand test. After determining that Tebow had failed the gaze nystagmus test, the deputy asked Tebow to undergo more sobriety tests. As the deputy led Tebow to a level surface for the other field sobriety tests, he noticed Tebow stagger. During a walk-and-turn test, Tebow lost his balance and did not touch his heel to his toe. He also was not able to hold one leg up in the air for the required 20 counts and had to use his arms to steady himself and put his other foot down. The deputy then arrested Tebow for driving while intoxicated.

Later, at the county jail, the deputy read to Tebow the implied consent warning, and Tebow agreed to take a breath analysis test. The deputy observed Tebow for the required 15 minutes before administering the test with a BAC verifier machine. The deputy's report indicated that Tebow's blood alcohol content was .158 percent.

The director suspended Tebow's driving privileges pursuant to § 302.505, RSMo 1994. Tebow asked for, and received, an administrative hearing. The director affirmed her earlier decision to suspend Tebow's license. Tebow filed an application for a trial *de novo* in the circuit court.

At trial, the director offered three exhibits as evidence. Exhibits 1 and 2 were certified copies of Tebow's guilty pleas to speeding and a DWI. Exhibit 2 was admitted; Exhibit 1 was not. Exhibit 3, which the director offered as a business record, included a printout of the breathalyzer test results, the Alcohol Influence Report, the deputy's investigation report and the BAC Verifier Maintenance Report. The documents in Exhibit 3 were attached to the notarized affidavit of the records custodian of the Department of Revenue's Drivers License Bureau. Tebow's

attorney stipulated to the admission of Exhibit 3 as a business record, and he acknowledged that the director had sent him copies of the affidavit and records at least seven days before the trial. Tebow offered no evidence or testimony to contradict the information contained in the exhibits.

During the trial, the circuit court said that it could not accept the breathalyzer printout as proof of Tebow's blood alcohol content because it was illegible. The court also indicated that it could not rely on the deputy's "interpretation" of Tebow's blood alcohol results even though the test results were recorded in the certified Alcohol Influence Report. The circuit court concluded that the director had not met her burden of proof, and it reversed Tebow's suspension and reinstated his driving privileges.

The rationale for the circuit court's decision reversing the suspension is noted in its trial docket entry which said:

> Based on the quality of the BAC tape and the fact that all evidence was hearsay the Court finds that the combination of all factors made it too unreliable to base the whole case on hearsay. [The] Court finds for the Petitioner.... [The] Officer in this case is now deceased. Court further finds that due to the officer's death the Court must rely on the report as to the Petitioner being given a warning under "Miranda." The Court finds that one was not given[.]

On appeal, the director contends that the trial court erred in setting aside Tebow's suspension because the evidence showed that the deputy had probable cause to believe that Tebow was operating a motor vehicle while intoxicated. The director claims the trial court erred in finding that it could not rely on the evidence presented by the director because it was hearsay.

 Section 490.680, RSMo 1994, sets out an exception to the hearsay rule. The statute mandates that the courts allow, upon qualification, the admission of business records for the truth of the matter asserted. *Cannon v. Director of Revenue,* 895 S.W.2d 302, 304 (Mo.App.1995). The statute says:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Although § 490.680 requires a foundation consisting of testimony by a qualified witness, § 490.692 allows this foundation to be established with an affidavit rather than by direct testimony. *Id.* at 304. This provides a practical way to avoid the necessity of a personal appearance by a records custodian. *Id.* at 305. Upon compliance with §§ 490.680 and 490.692, business records may be admitted into evidence without any additional direct testimony. *Id.* The court's decision whether to admit the business records remains a discretionary determination of the trustworthiness of the records. *Id.* at 306.

■ In this case, the director laid a sufficient foundation by submitting the affidavit of the records custodian of the Department of Revenue's Drivers License Bureau. The affidavit complied with the form and content of the form set out in § 490.692. Other than complaining that the breath analysis printout tape was illegible, Tebow offered no evidence or testimony to contradict any of the information contained in the director's records.

■ While caution should be exercised when a suspension case is submitted on the records alone, it is not prohibited. *Id.* at 306. Because the director laid a proper foundation for admission of the Department's business records which were not contradicted, those documents constituted sufficient evidence to uphold the director's suspension of Tebow's driver's license. Although submission of a case on the records alone may pose some risks—including the inability to explain discrepancies or to rehabilitate "witnesses"— this was not a problem in this case. Tebow presented no evidence and the record does not indicate any discrepancies in the director's evidence.

■ That the breath analysis printout was illegible did not prevent the director from meeting her burden. Even had she not produced a printout tape at all, this would not have been a proper basis for voiding her suspension of Tebow's license because she presented other evidence establishing that Tebow was intoxicated. *See Tomkins v. McNeil,* 782 S.W.2d 400, 402 (Mo.App.1989).

The director has the burden to show, by a *preponderance* of the evidence, that the police had probable cause to arrest the petitioner for driving while intoxicated and that at the time of the arrest, the driver's blood alcohol content was at least .10 percent. *Buckley v. Director of Revenue,* 864 S.W.2d 394, 395 (Mo.App.1993). She met that burden.

It was undisputed that the deputy who arrested Tebow had probable cause to stop his vehicle. There was also no evidence presented to refute that the deputy was employed with the Cass County Sheriff's department and had the power to make arrests for violations of § 577.010, RSMo 1994.

■ The uncontradicted evidence established that the deputy had probable cause to believe that Tebow had been driving while intoxicated. He saw Tebow traveling 89 MPH on a county highway, detected the odor of intoxicants on Tebow's breath, noticed Tebow stagger, saw Tebow fail field sobriety tests, and heard him acknowledge drinking beer.

The evidence also established that Tebow's blood alcohol content exceeded .10 percent. The deputy certified in the Alcohol Influence Report that the BAC test results showed that Tebow's blood alcohol content was .158 percent. He also recorded the test results in his investigation report. The record indicates that the deputy had a valid permit from the Missouri Department of Health to operate a BAC verifier machine. He certified that he was authorized to operate the machine and that he had not deviated from the standard procedures approved by the Department of Health in administering the test to Tebow. He also certified that the machine was functioning properly.

 The director correctly argues that the circuit court also erred in finding that the deputy's not informing Tebow of his constitutional rights was relevant to this case. The exclusionary rule applies only to criminal proceedings and is not applicable to civil actions such as this one. *Gordon v. Director of Revenue,* 896 S.W.2d 737, 740 (Mo.App. 1995).

We, therefore, reverse the circuit court's judgment. We remand with instructions that the circuit court reinstate the director's suspension order.

All concur.