C & W ASSET ACQUISITION, LLC, Plaintiff–Appellant,

v.

Janos SOMOGYI, Defendant–Respondent.

No. 25764.

Missouri Court of Appeals, Southern District, Division Two.

May 26, 2004.

Thomas J. Fritzlen, Jr., Martin, Leigh, Laws & Fritzlen, P.C., Kansas City, MO, for appellant.

John E. Curran, Osage Beach, MO, Brook McCarrick, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

C & W Asset Acquisition, L.L.C. ("Appellant") appeals from the trial court's dismissal of its petition against Janos Somogyi ("Respondent"). Appellant argues the trial court erred in excluding certain documents for failing to meet the requirements of Section 490.680.[1] We affirm.

The record reveals that on May 9, 1998, Respondent entered into a credit card agreement with MBNA Bank of America ("MBNA") whereby MBNA agreed to extend credit to Respondent and he agreed to pay the amount advanced plus interest. According to Appellant, on July 18, 2001, Appellant became the owner and holder of Respondent's credit agreement through an assignment from MBNA. On October 22, 2001, The Cadle Company ("Cadle"), acting as "servicer" for Appellant, made written demand on Respondent for the principal balance of $12,730.37, in addition to accrued interest. When Respondent failed to pay the amount requested, Appellant filed suit on the credit agreement.

At trial on April 7, 2003, the only evidence offered by Appellant was Exhibit 1,[2] which it sought to introduce under the business records exception to the hearsay rule. See § 490.692. Respondent objected to Exhibit 1 on several grounds. He argued that the affidavit of Spoonamore, a Cadle employee, did not comply with Section 490.692, in that Cadle was not involved in the litigation and there was no evidence as to the business relationship between Appellant and Cadle; therefore, the documents and the affidavit were hearsay. Additionally, Respondent argued "the affidavit on its face is somewhat suspect. If, according to the affidavit itself, this is a compilation of records from MBNA Mastercard, which in turn has supposedly ... had the Cadle Company act as a servicer, there isn't any way that [Spoonamore] would have knowledge of the MBNA account, and she doesn't say that." Further, Respondent argued that Exhibit 1 did not even show that Appellant was the true party in interest to this litigation. Respondent stated that the three pages supposedly evidencing the "Loan Sale Agreement" between MBNA and Appellant were severely redacted, did not correlate, and failed to show that Appellant was the actual owner of the credit agreement. Respondent concluded by stating, "there [are] no assurances that MBNA America or some other assignee of MBNA America will [not] come in and sue [Respondent] again, saying that they really were the

---

1. All statutory references are to RSMo 2000, unless specifically stated.

2. Exhibit 1 contained twenty-one pages of documents, including: an affidavit by Cadle employee Linda Spoonamore ("Spoonamore"); a copy of the letter Respondent received from Cadle on October 22, 2001; a copy of Respondent's signed credit agreement with MBNA; a page containing Respondent's loan and contact information; the terms and conditions of the credit card agreement; two pages of a "Loan Sale Agreement," effective July 18, 2000, between MBNA and Appellant; a redacted page containing information about Respondent's account; and, a statement of Respondent's account.

person or entity who took title to [the] account." The trial court took Respondent's objection under advisement. At the close of Appellant's case, Respondent offered no evidence and moved for a dismissal.

In dismissing Appellant's petition, the trial court found:

> The affidavit does not state the affiant has any knowledge of MBNA Bank of America's records; their mode of preparation or whether MBNA's records of the account were made in the regular course of business at or near the time of the act, condition or event as prescribed by RSMo [Section] 490.680. In fact, the affidavit makes no mention of MBNA at all.
>
> The Court finds that Exhibit 1 is not adequate to provide a basis for the admission of the business records contained in Exhibit 1 since the source of information is not such as to justify the admission of the record pursuant to RSMo [Section] 490.680.

Appellant asserts two points on appeal. As best we can discern, Appellant's first point argues that the judgment was against the weight of the evidence in that the trial court improperly excluded Exhibit 1 and had Exhibit 1 not been excluded, Appellant would have prevailed. Second, Appellant argues "[t]he trial court abused its discretion in excluding [Appellant's] Exhibit 1, the affidavit and business records, because the affidavit and business records were admissible and complied with [Section] 490.680."

 Taking Appellant's points out of order, we first consider whether the trial court abused its discretion in excluding Appellant's Exhibit 1. The admissibility of evidence lies within the sound discretion of the trial court; therefore, there can be no

error absent a showing that the court abused its discretion. *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 819 (Mo. banc 2000). In reviewing for an abuse of discretion, we presume the trial court's ruling is correct, and reverse only when that

> ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.

*Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992).

At the outset, we note that Point II fails to comply with Rule 84.04(d).[3] Rule 84.04(d) requires that each point relied on: (1) identify the trial court's ruling or action that the appellant is challenging on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error. *State v. Nunley*, 103 S.W.3d 374, 376 (Mo. App. W.D.2003). Here, while Appellant's second point relied on provides the legal basis for their allegation of error, the point nonetheless falls short by its failure to "explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error." Rule 84.04(d)(B)–(C). Further, Point II offers no hint as to how the facts in the case demonstrate a lack of careful consideration by the trial court, how the ruling shocks any sense of justice, or in what respect applicable statutory factors were not applied. As such, Appellant's point is little more than an "[a]bstract statement of

---

3. All rule references are to Supreme Court Rules (2003), unless otherwise stated.

law," which, standing alone, fails to comply with Rule 84.04(d). However, because we can glean the legal reasons from Appellant's argument we will address the merits of its claim.

 Section 490.680, which sets forth the foundational requirements for a document to be admitted under the business record exception to the hearsay rule, provides:

A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

When the enumerated statutory requirements are met, "the statute invests the record with a presumptive verity, and so excepts them from the hearsay rule." *Davolt v. Highland,* 119 S.W.3d 118, 134 (Mo. App. W.D.2003) (citing *Piva v. Gen. Am. Life Ins. Co.,* 647 S.W.2d 866, 877 (Mo. App. W.D.1983)). The trial court has broad discretion in determining whether a party properly complied with this provision. *Waldron v. Ragland,* 716 S.W.2d 861, 862 (Mo.App. E.D.1986). Thus, "the bottom line" regarding the admissibility of the business records is the discretionary determination by the trial court of their trustworthiness. *Davolt,* 119 S.W.3d at 134 (citing *The Rouse Co. of Missouri, Inc., v. Justin's, Inc.,* 883 S.W.2d 525, 530 (Mo.App. E.D.1994)); *see also* Section 490.680.

 In this case, Appellant did not present the custodian of the records or any other witness to identify the records; instead, Appellant relied upon the filing of an affidavit prepared in accordance with Section 490.692, which states in pertinent part:

1. Any records or copies of records reproduced in the ordinary course of business ... that would be admissible under sections 490.660 to 490.690 shall be admissible as a business record, subject to other substantive or procedural objections, in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of sections 490.660 to 490.690, that the records attached to the affidavit were kept as required by section 490.680.

. . . .

3. The affidavit permitted by this section may be in form and content substantially as follows[.]

This Section

provides a practical way to avoid the necessity of a personal appearance by a records custodian. Upon compliance with §§ 490.680 and 490.692, business records may be admitted into evidence without any additional direct testimony. The court's decision whether to admit the business records remains a discretionary determination of the trustworthiness of the records.

*Tebow v. Dir. of Revenue,* 921 S.W.2d 110, 113 (Mo.App. W.D.1996) (internal citations omitted).

We agree with Appellant that the Spoonamore affidavit substantially complies with the form and content requirements of Section 490.692. *See Wisdom v. Dir. of Revenue,* 988 S.W.2d 127, 129 (Mo.App. S.D.1999) (stating that the affidavit should substantially comply with the form and content set forth in the statute). However, we disagree with Appellant's argument that statutory compliance with Section 490.692 is all that is required to have the documents included as business records.

The ultimate determination is whether in the opinion of the trial court the sources of the documents justify [their] admission. *See* § 490.680; *Tebow,* 921 S.W.2d at 113.

■ Here, there is simply no justification for the admission of these records pursuant to Section 490.680. Appellant relies on *Tomlin v. Alford* for the proposition that personal knowledge of the accuracy of these entries on the part of the custodian of records is not a requirement. *Tomlin v. Alford,* 351 S.W.2d 705, 712 (Mo.1961). In *Tomlin,* the custodian of records was a military officer employed by the military records center. *Id.* Noting that the custodian's duty was mainly to provide service records for litigation purposes, the *Tomlin* court allowed the records into evidence:

> [h]e is familiar with the manner of the keeping of army medical hospital records, both through continual observance for more than 13 years of such records and also by the fact that he has personal knowledge of the army regulations under which they are required to be and are kept, and that such records comply with those regulations and are made in accordance with the normal course of army business.
>
> . . . .
>
> We think the evidence herein given by an official of the department having custody of said records warranted the court

in finding, as it did find, that the sources of information, method and time of preparation were such as to justify their admission.

*Id.*

The salient difference between *Tomlin* and the present matter is the *Tomlin* custodian's relationship to the evidence. First, in *Tomlin,* the custodian of records was testifying in person at the trial and not via affidavit; therefore, he was available for cross-examination and to give additional testimony. Furthermore, the *Tomlin* custodian of records had a much greater familiarity with the records than Spoonamore does in this case.[4] Here, we fail to see how Spoonamore can attest to the identity and the mode of preparation of these particular documents given that they were created by MBNA, a company that Spoonamore neither works for, nor mentions in her affidavit.[5] While Appellant asserts that these documents were created by MBNA, passed to C & W, and then given to Cadle, at which time Spoonamore became their custodian, there is no way to glean that information from the affidavit or the documents.

We note that Appellant is correct that personal knowledge as to the mode of preparation of the documents is not necessarily required for their admission;[6] how-

---

4. *See also Conser v. Atchison, Topeka & Santa Fe Ry. Co.,* 266 S.W.2d 587 (1954) (finding that records did not meet the requirements for business records where they were produced by a Veterans Administration attorney in a regional office, who had nothing to do with their record keeping and there was no showing of the mode of record preparation or when records were made).

5. In Spoonamore's affidavit she merely affirms that she is "the custodian of the records of C & W, and its predecessor in interest."

6. *See Rouse,* 883 S.W.2d at 530 (allowing foundational testimony of sponsoring witness,

who was familiar with the record keeping procedures of the company, but was not an employee of company at the time the documents were prepared); *Rossomanno v. Laclede Cab Co.,* 328 S.W.2d 677 (Mo. banc 1959) (holding that the witness, an employee in a doctor's office, was competent to identify a business record and testify to the mode of its preparation even though she was not employed in the office at the time the records were prepared because her testimony as to the "mode of preparation" need not be based on personal knowledge); *Finkel v. Hoel–Steffen Constr. Co.,* 631 S.W.2d 645 (Mo.App. E.D.1981) (allowing the witness, who was a

ever, this principle does not assist Appellant.[7] Here, there is simply no evidence as to where these records came from or any indication as to who authored them. While in *Tomlin*, the custodian properly established a custodial relationship to the evidence, in the present matter, Spoonamore only served as a conduit to the flow of records and could not testify to the mode of preparation. *See State ex rel. Hobbs v. Tuckness*, 949 S.W.2d 651, 655 (Mo.App. W.D.1997). Allowing a litigant to be the "custodian" of another entity's records seems to run contrary to the spirit of Section 490.692. *Id.* at 656.

■ Further, the documents do not establish the credit agreement, default and balance due as argued by Appellant. On their face, the documents show that Respondent entered into a credit agreement with MBNA and that Respondent defaulted on that account in the amount of $12,730.37; however, the documents do not show that Appellant had the right to enforce that credit agreement. Specifically, the three pages relied upon by Appellant to prove that it purchased Respondent's account from MBNA are simply not sufficient. The first page, entitled "Loan Sale Agreement," merely identifies the parties, MBNA and C & W, and states the effective date of the transaction.[8] The second page contains a pair of signatures [9] and the third page contains a redacted table of four accounts.[10] These three pages do not appear to have any relationship to one another given that they are respectively numbered "i", "7", and "19 of 28". Moreover, even if the pages are taken together, they do not clearly show that Appellant is the rightful owner of the credit agreement at issue and, thus, the real party in interest.[11] These documents do not contain the

project manager, to identify copies of invoices, time sheets, and work orders where he stated that his employees, working under his direction, had prepared the exhibits in question, and he testified at length on the normal procedure for preparing the documents).

7. *See Estate of Markley*, 922 S.W.2d 87, 92 (Mo.App. W.D.1996) (finding testimony insufficient to lay proper foundation where the custodian did not know what the document was, did not know how it was prepared, and could not testify as to the normal procedures for preparing such a document); *Nickels v. Nickels*, 817 S.W.2d 632, 638 (Mo.App. S.D. 1991) (finding that testimony of accountant was insufficient to lay foundation for admission of tax returns where the accountant did not prepare the returns, had no personal knowledge of the information contained in them, and there was no evidence that they were made in the regular course of his business).

8. The first page, page 18 of Exhibit 1, states in full:
LOAN SALE AGREEMENT
DATED AND EFFECTIVE AS OF July 18, 2000
BY AND AMONG

SELLER: MBNA AMERICA BANK, N.A.,
AND
BUYER: C&W Asset Acquisition, L.L.C.
Additionally, this page is numbered at the bottom as "i."

9. The second page, page 19 of Exhibit 1, states in full:

IN TESTIMONY WHEREOF, the parties hereto have executed this Agreement.
BUYER: C&W Asset Acquisition, L.L.C.
By: /s/ Daniel C. Cadle
Name: Daniel C. Cadle
Title: Co. Manager
SELLER: MBNA AMERICA BANK, N.A.
By: /s/ Lee Suekoff
Name: Lee Suekoff
Title: Senior Vice President
This page is numbered "7" at the bottom.

10. The third page, page 37 of Exhibit 1, indicates at the top that it is "page 19 of 28" and contains a table. The first three rows of the table contain information that is completely redacted and the fourth row contains information regarding Respondent's account.

11. We concur with Respondent's assertion that this situation is similar to a suit based

language or the information necessary to prove that Respondent's account was validly assigned to Appellant.

 The Missouri Business Records as Evidence Law "is designed to facilitate the admission of documents which experience has demonstrated to be trustworthy. The focus is on the character of the records with consideration for certain earmarks of reliability." *Davolt,* 119 S.W.3d at 134. We find no abuse of discretion by the trial court in excluding these documents. Point II is denied.

As noted above in Point I, Appellant claims the trial court's judgment was against the weight of the evidence because the trial court improperly excluded Exhibit 1. In a court-tried case the judgment of the trial court will be upheld unless there is no substantial evidence to support it, it is "against the weight of the evidence," it erroneously declares the law, or it erroneously applies the law. *KJC Dev. Corp. v. Land Trust of Jackson County,* 6 S.W.3d 894, 896 (Mo. banc 1999). The power to set aside a judgment on the ground that it is "against the weight of the evidence" must be exercised with caution and only with the firm belief that the decree or judgment is wrong. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).[12] Based on the above determination that Exhibit 1 was not erroneously excluded, we similarly conclude that the trial court's judgment was not in error. Point II is denied.

upon a promissory note. As stated in *Huber v. Paradise:*

> Under the issues in this case, the plaintiffs were required in order to recover to show by legal and competent evidence that they were the ... owners of the note sued on; and, it appearing that they have not so done, this case must be determined against them for that reason.

For the reasons set forth herein, we affirm the judgment of the trial court.

PARRISH, J., and SHRUM, J., concur.

*Huber v. Paradise,* 231 Mo.App. 521, 101 S.W.2d 748, 752 (Mo.App.1937); *see also Student Loan Mktg. Ass'n. v. Holloway,* 25 S.W.3d 699, 703 (Mo.App. W.D.2000).

12. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that Rule now appear in essentially the same form, in Rule 84.13(d).